**Eulala SHUTE and Russel Shute,
Plaintiffs–Appellants,**

v.

**CARNIVAL CRUISE LINES,
Defendant–Appellee.**

No. 87–4063.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 5, 1988.

Decided Dec. 12, 1988.

Withdrawn April 27, 1989.

Amended and Refiled Feb. 22, 1990.

378

Gregory J. Wall, Brousseau, Wall & Jankovich, Seattle, Wash., for plaintiffs-appellants.

Jonathan Rodriguez–Atkatz, Bogle & Gates, Seattle, Wash., for defendant-appellee.

Before FLETCHER, BOOCHEVER and TROTT, Circuit·Judges.

FLETCHER, Circuit Judge:

Plaintiffs Eulala and Russell Shute appeal the district court's decision to grant the defendant's motion for summary judgment, dismissing their suit for damages. The district court granted the motion on the grounds that the defendant's forum-related activities were insufficient to support the exercise of personal jurisdiction in a manner consistent with due process. We reverse.

## BACKGROUND

The defendant-appellee, Carnival Cruise Lines, is a Panamanian corporation with its principal place of business in Miami, Florida. It is undisputed that Carnival is not registered to do business in the State of Washington. It owns no property in Washington, maintains no office or bank account in Washington and pays no business taxes in Washington. It has never operated ships which have called at Washington ports. It has no exclusive agent in Washington. Carnival does, however, advertise its cruises in local Washington newspapers. It also provides brochures to travel agents in Washington, which in turn are distributed to potential customers. Carnival also periodically holds seminars for travel agents in the State of Washington to inform them about, and encourage them to sell, Carnival cruises. Carnival pays travel agencies a 10% commission on proceeds from tickets sold for Carnival cruises.

The plaintiff-appellants, who are Washington residents, purchased tickets through Smokey Point Travel in Arlington, Washington for a seven day cruise on a Carnival Cruise Lines ship, the TROPICALE. The appellants were to embark in Los Angeles, California, sailing from there to Puerto Vallarta, Mexico. The tickets were purchased through the travel agent, who forwarded payment to Carnival in Miami. The tickets were issued in Florida, then · forwarded to the appellants in Washington.

The passage contract ticket contained a forum selection clause that provided as follows:

It is agreed by and between the passenger and the Carrier that all disputes and matters whatsoever arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida, U.S.A., to the exclusion of the courts of any other state or country.

The appellants' cause of action arises from injuries suffered by Mrs. Shute when she slipped on a deck mat while on a guided tour of the ship's galley. This incident occurred in international waters off the coast of Mexico. The Shutes allege that the fall was due to the negligence of Carnival and its employees, and request damages arising out of personal injuries to Mrs. Shute.

Carnival moved for summary judgment on two grounds: first, that the district court lacked personal jurisdiction over Carnival; and second, that the passenger ticket contract required the Shutes to bring all claims against Carnival in the Florida courts. In the alternative, Carnival requested a transfer of the case to the U.S. District Court for the Southern District of Florida. The court addressed only the first issue, ruling that it lacked personal jurisdiction over Carnival. The Shutes timely appeal.

## DISCUSSION

I.  *Burden of Proof/Standard of Review*

■  The plaintiff has the burden of establishing that the court has personal jurisdiction. *Cubbage v. Merchent,* 744 F.2d 665, 667 (9th Cir.1984), *cert. denied,* 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985). Where the trial court's ruling is based solely upon a review of affidavits and discovery materials, dismissal is appropriate only if the plaintiff fails to make a *prima facie* showing of personal jurisdiction. *Fields v. Sedgwick Associated Risks, Ltd.,* 796 F.2d 299, 301 (9th Cir.1986); *Data Disc, Inc. v. Systems Tech. Assocs., Inc.,* 557 F.2d 1280, 1285–86 (9th Cir.1977); *cf. Haisten v. Grass Valley Med. Reimbursement Fund,* 784 F.2d 1392, 1396, n. 1 (9th Cir.1986) (where defendant challenges judgment entered against it on the merits, the plaintiff bears the full burden of proof

of personal jurisdiction by the preponderance of the evidence).

A district court's determination that personal jurisdiction can properly be exercised is a question of law reviewable *de novo* when the underlying facts are undisputed. *Haisten*, 784 F.2d at 1396. For the purposes of this appeal, we treat the plaintiffs' allegations as correct. *Fields*, 796 F.2d at 301.

## II. *Personal Jurisdiction*

This action was brought in admiralty in the U.S. District Court for the Western District of Washington. In order to establish personal jurisdiction, the Shutes must demonstrate that the forum state's jurisdictional statute confers personal jurisdiction, and that the exercise of jurisdiction accords with federal constitutional principles of due process. *Pacific Atlantic Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1327 (9th Cir.1985).

█ Washington's jurisdictional statute provides, in relevant part, as follows:

(1) Any person whether or not a citizen or resident of this state, who, in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of said acts: (a) the transaction of any business within the state....

Wash.Rev.Code 4.28.185 (West 1988). This statute has been construed by the Supreme Court of Washington to permit the assertion of jurisdiction to the extent permitted by due process, except where limited by the terms of the statute. *Deutsch v. West Coast Mach. Co.*, 80 Wash.2d 707, 497 P.2d 1311 (1972).[1] For our purposes, "the statutory and constitutional standards merge into a single due process test." *Pedersen Fisheries, Inc. v. Patti Indus.*, 563 F.Supp. 72, 74 (W.D.Wash.1983).[2]

Considerations of due process require that non-resident defendants have certain minimum contacts with the forum state, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). However, the nature and quality of the necessary contacts required vary, depending upon the type of jurisdiction asserted.

█ Courts may exercise either general or specific jurisdiction over non-resident defendants. General jurisdiction exists where the non-resident defendant has " 'substantial' or 'continuous and systematic' contacts with the forum state." *Fields*, 796 F.2d at 301 (quoting *Haisten*, 784 F.2d at 1396). A court exercising general jurisdiction over a defendant may hear cases unrelated to the defendant's forum-related activities. *Id.*

The level of contact with the forum state necessary to establish general jurisdiction is quite high. *See, e.g., Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (no jurisdiction over foreign corporation that sent officers to forum for a negotiating session, accepted checks drawn from a forum bank, purchased equipment from the forum, and sent personnel to the forum to be trained); *Cubbage*, 744 F.2d at 667–68 (no general jurisdiction over non-resident doctors despite significant number of patients in forum, use of forum's state

---

1. This opinion was withdrawn by order of the panel certifying to the Supreme Court of Washington the question of whether the Washington long-arm statute would confer personal jurisdiction over Carnival Cruise Lines for the claim asserted by the Shutes. The Supreme Court has now held "that the business activities of the cruise line in [the State of Washington] permits the assertion of jurisdiction." *Shute v. Carnival Cruise Lines*, 113 Wash.2d 763, 783 P.2d 78 (1989). The opinion is refiled as modified herein.

2. Where jurisdiction is asserted under § 4.28.185(1)(a), the "transaction of any business" provision, the Washington courts apply a three factor test that is virtually identical to the specific jurisdiction due process test employed by this circuit. *Compare Deutsch*, 497 P.2d at 1314 *with Haisten*, 784 F.2d at 1397. We therefore conclude that the Washington long-arm statute imposes no limitations beyond those imposed by due process.

medical insurance system and telephone directory listing that reached forum); *Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1330–31 (9th Cir.1984) (no general jurisdiction over defendants despite several visits and purchases in forum, solicitation of contract in forum which included choice of law provision favoring forum, and extensive communication with forum), *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985); *Congoleum Corp. v. DLW Aktiengesellschaft,* 729 F.2d 1240, 1242–43 (9th Cir.1984) (foreign corporation's sales and marketing efforts in forum state, including solicitation of orders, promotion of products to potential customers through the mail and through showroom displays, and attendance at trade shows and sales meetings, were insufficient contact to assert general jurisdiction).

■ Carnival's contacts with the State of Washington are insufficient to support an exercise of general jurisdiction. Carnival has no offices and no exclusive agents in Washington, it is not registered to do business there, and it pays no taxes there. These factors militate against the exercise of general jurisdiction. *See Fields,* 796 F.2d at 302. Its contacts are limited to advertising in the local media, the mailing of brochures and the payment of commissions to travel agents, the conducting of promotional seminars, and the sale of its vacation cruises to residents of Washington. Only 1.29% and 1.06% of Carnival's cruise business was derived from residents of Washington in 1985 and 1986, respectively. This court has held under somewhat similar facts that the exercise of general jurisdiction would violate due process. *See Congoleum,* 729 F.2d at 1243.

■ If the non-resident defendant's activities within the forum are not sufficiently pervasive to justify the exercise of general jurisdiction, a court may nevertheless assert jurisdiction for a cause of action arising out of the defendant's activities within the forum. The Ninth Circuit has devised a three-part test to determine whether the exercise of this "specific" jurisdiction comports with due process: (1) The defendant must have done some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must arise out of the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Haisten,* 784 F.2d at 1397; *Data Disc,* 557 F.2d at 1287.

1. Purposeful Availment

Purposeful availment requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state. *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 840 (9th Cir. 1986). This focus upon the affirmative conduct of the defendant is designed to ensure that the defendant is not haled into court as the result of random, fortuitous or attenuated contacts, or on account of the unilateral activities of third parties. *See, e.g., World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (purchaser's unilateral act of bringing defendant's product into the forum state provides an insufficient basis for the exercise of personal jurisdiction over the defendant).

This circuit has held that a non-resident defendant's act of soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business. *Sinatra v. National Enquirer, Inc.,* 854 F.2d 1191, 1195 (9th Cir.1988); *Decker Coal,* 805 F.2d at 840 ("if the defendant directly solicits business in the forum state, the resulting transactions will probably constitute the deliberate transaction of business invoking the benefits of the forum state's laws").

In *Sinatra,* the plaintiff filed suit in California against Clinic La Prairie, a Swiss health clinic, for misappropriation of his name and likeness. The *National Enquirer* had done a full feature on the Clinic in exchange for Clinic officials' agreement to make false statements regarding Frank Sinatra's alleged stay at the Clinic. Sinatra had never visited the Clinic. The court ruled that the Clinic's advertisements in the

forum state, coupled with its misappropriation of Sinatra's name through the *Enquirer* article, were sufficiently directed toward the forum to satisfy the purposeful availment prong of the *Data Disc* test. 854 F.2d at 1195–98.

The *Sinatra* court's premise that solicitation of business in the forum state will support a finding of purposeful availment has substantial support in *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Justice O'Connor, writing for a four-Justice plurality, noted that conduct such as "designing the product for the market in the forum State, establishing channels for providing regular advice to customers in the forum State, advertising in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State" may evidence purposeful availment. 480 U.S. at 112, 107 S.Ct. at 1033. The plurality relied upon the absence of these factors to conclude that Asahi did not purposefully avail itself of the California market. *Id.*[3]

■ In light of these cases, it is difficult to conclude that Carnival did not purposefully avail itself of the laws of Washington. It advertised in the local media, promoted its cruises through brochures sent to travel agents in that state, and paid a commission on sales of cruises in that state. In addition, Carnival conducted promotional seminars in Washington designed to increase its sales to residents of that state. Carnival's efforts to solicit business in Washington were more extensive than those of the defendant Clinic in *Sinatra*, which consisted of advertisements in a few periodicals circulated in California. *Sinatra*, 854 F.2d at 1196.[4]

Carnival maintains that the fact it has never "consummated" a transaction in Washington precludes a finding of purposeful availment. In Carnival's view, the fact that the ticket is issued in Florida after receipt of payment and the fact that the cruise takes place completely outside of Washington State are decisive. This misses the point. As the Supreme Court has explained, the reality of modern commercial life is that many transactions take place solely by mail or wire across state lines, obviating the need for physical presence in the state toward which the defendant's activities are directed. Thus, the Court has held that the physical absence of the defendant and the transaction from the forum cannot defeat the exercise of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); *see also Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 907 (6th Cir.), *cert. denied* —— U.S. ——, 109 S.Ct. 310, 102 L.Ed.2d 329 (1988) ("Neither the presence of the defendant in the state, nor actual contract formation need take place in the forum state for defendant to do business in that state.").

The actions taken by Carnival to solicit business within the State of Washington were clearly purposefully directed toward residents of Washington. To that extent, it is irrelevant where the tickets are issued or where the cruise takes place. In addition, Carnival's argument ignores the fact that the promotional seminars actually took

---

**3.** Justice Brennan, writing for four members of the Court, maintained that the absence of "additional conduct" such as advertisement in the forum state was irrelevant. In his view, placing the goods in the stream of commerce with the knowledge that they will reach the forum state, when considered in light of the economic benefit received from sales in the forum, is sufficient to establish purposeful availment. 480 U.S. at 117, 107 S.Ct. at 1035 (Brennan, J., concurring). Under this standard, it is possible that Carnival's knowledge that ticket sales were being made to Washington residents is, in itself, sufficient to establish that Carnival purposefully availed itself of the benefits and protections of Washington law. We need not reach that ques-

tion, however, because Carnival engaged in three of the four types of conduct mentioned by Justice O'Connor. We view these actions to be sufficient to meet the purposeful availment test.

**4.** It should be noted, however, that in analyzing whether the defendant Clinic had directed its activities toward California, the court also considered the effects in the forum of the defendant's acts. Thus, the fact that California was the situs of the tortious injury was a factor which led the court to find purposeful availment. 854 F.2d at 1196–98. That factor is not present in this case.

place within the state. In short, Carnival's actions were more than sufficient to meet the purposeful availment test.

### 2. Arising Out Of

The second prong of the three-part *Data Disc* test requires that the claim must "arise out of" the defendant's forum-related activities. Carnival maintains that the Shutes' claim, which is based on allegations of negligence with respect to conditions on the TROPICALE, does not "arise out of" Carnival's business solicitation contacts with Washington.

Carnival points to several cases outside this circuit supporting its contention that, for purposes of personal jurisdiction, "slip and fall" claims do not arise out of the defendant's business solicitation activities in the forum. *See Marino v. Hyatt Corp.*, 793 F.2d 427 (1st Cir.1986); *Pearrow v. National Life & Accident Ins. Co.*, 703 F.2d 1067 (8th Cir.1983); *see also Gelfland v. Tanner Motor Tours, Ltd.*, 339 F.2d 317, 321–22 (2d Cir.1964) (plaintiff's injuries sustained while on defendant's bus tour did not arise from defendant's forum activities, where those activities consisted of ticket sale through independent travel agent in the forum).

In *Marino* the plaintiff, a resident of Massachusetts, sued Hyatt, a Delaware corporation with its principal place of business in Illinois, for injuries incurred at one of the defendant's hotels. The plaintiff had made reservations through a Massachusetts travel agent to stay at the defendant's Hyatt Regency Hotel in Maui, Hawaii. The plaintiff slipped in the bathtub of her Hawaii hotel room, sustaining injuries. The court of appeals affirmed the district court's dismissal of her ensuing personal injury claim for lack of personal jurisdiction.

Basing its decision on an interpretation of the Massachusetts long-arm statute, the court acknowledged that Hyatt transacted business in Massachusetts. However, the court concluded that the claim, stemming from Mrs. Marino's fall in the bathtub in Hawaii, did not "arise from" the reservation contract entered into in Massachusetts. 793 F.2d at 430.[5]

In *Pearrow* the plaintiff, an Arkansas resident, slipped and fell on the floor of the Hospitality Suite at Opryland USA in Nashville, Tennessee. He brought an action in Arkansas against the owner of Opryland, National Life. The district court dismissed the case for lack of jurisdiction, noting that the cause of action did not arise out of the defendant's activities in Arkansas, and that the Arkansas long-arm statute therefore provided no basis for the exercise of jurisdiction. The court of appeals affirmed.

Noting that National was registered to conduct insurance business in Arkansas, the court concluded that the plaintiff's Tennessee injury had nothing to do with that insurance business. More important, the court concluded that National's act of sending brochures into Arkansas soliciting visits to Opryland was "too tenuous" a connection to support jurisdiction. 703 F.2d at 1069.

Were this court to apply the "arising from" analysis of *Marino* and *Pearrow* to this case, we would conclude that Mrs. Shute's fall did not arise out of Carnival's solicitation of business in Washington. Rather, we would find that her injuries arose out of the negligent failure to maintain a safe passageway through the galley of the TROPICALE. However, *Cubbage v. Merchent*, 744 F.2d 665, suggests that this circuit has not adopted such a stringent standard of causation in evaluating whether a court has specific jurisdiction.

In *Cubbage*, this court was faced with a medical malpractice suit brought in a federal district court in California by a California resident against two doctors and a hospital located in and licensed in Arizona. Although the doctors were not licensed to practice in California, they applied for and were issued California Medi–Cal numbers.

---

**5.** The court distinguished *Hahn v. Vermont Law School*, 698 F.2d 48 (1st Cir.1983) (a cause of action for breach of contract arose from law school's act of sending recruiters to Massachu-setts). In the court's view, a cause of action for breach of contract was distinguishable from a cause of action alleging a negligent tort.

Both doctors and the hospital were listed in a telephone directory which was distributed in the area of California lying adjacent to Arizona, and a significant number of the defendants' patients (including Cubbage) were California residents.

Applying the *Data Disc* test, the court held that the exercise of specific jurisdiction did not offend due process. Of particular relevance is the court's holding that the appellant's malpractice claim arose out of the defendant's solicitation of patients from California. 744 F.2d at 670. Had the *Cubbage* court applied reasoning similar to that utilized in the cases cited by Carnival, Cubbage's claim would have arisen out of the doctor's negligent treatment of Cubbage in Arizona, not out of the business solicitation activities in California. In our view, *Cubbage* must be read as a rejection by this circuit of the rigid causation standard advanced by Carnival.

Decisions by at least two other courts of appeal support the view that a tort can arise from prior business solicitation in the forum state. *Lanier*, 843 F.2d at 901; *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260 (5th Cir.1981). These courts apply a "but for" test of causality in this type of situation.

*Lanier* involved allegations of sex discrimination in the certification procedure employed by the defendant Board. The plaintiff, a licensed Michigan dentist, sought certification by the defendant through its Chicago, Illinois headquarters. Dr. Lanier twice failed the oral examination required for certification, once in Phoenix, once in Chicago. She then filed suit in Michigan. The district court ruled that it lacked personal jurisdiction over the defendant, but the appellate court reversed.

The Sixth Circuit court first determined that the Board's contacts with the State of Michigan, which consisted of the collection of application fees from Dr. Lanier, together with a series of telephone calls and written correspondence to Dr. Lanier in Michigan, were sufficient to constitute "the transaction of any business" within the meaning of the long-arm statute. The court then considered whether the "arising out of" requirement of the long-arm statute was fulfilled. The Board argued that the plaintiff's cause of action arose from the allegedly unfairly evaluated oral examinations given in Arizona and Illinois rather than from its contacts with Dr. Lanier in Michigan. The court rejected this argument, commenting that it was "unpersuaded that the plaintiff's relationship and contacts with the defendant Board can be logically or legally fragmented in that fashion." 843 F.2d at 908.

In the court's view, the entire course of events underlying Dr. Lanier's claim was an uninterrupted whole which began with, and was uniquely made possible by, the Board's contacts in Michigan. But for those contacts, the cause of action would never have come about.

> Whether the decision to discriminate occurred before, during, or after the oral examination administered to plaintiff is not controlling ...; it arose from, was occasioned by, and would not have occurred but for the totality of Dr. Lanier's efforts to obtain Board certification—efforts which derived, as we have held, from the defendant's limited business contacts with Dr. Lanier in Michigan.

*Id.* at 908–09.

The Fifth Circuit expressed similar sentiments in *Prejean*. In that case, survivors of employees allegedly under contract with Sonatrach, the Algerian national oil company, brought a wrongful death action in Texas against Sonatrach, Air Algeria and Beech Aircraft Corporation. The plaintiffs alleged that their spouses, while in Algeria performing duties pursuant to a contract with Sonatrach, died when a plane chartered by Sonatrach crashed.

Applying the Texas jurisdictional statute, the district court dismissed the action as to all three defendants for want of personal jurisdiction. The court of appeals affirmed as to Air Algeria and Beech, but reversed and remanded for further discovery as to jurisdiction over Sonatrach.[6]

6. The defendant disputed the existence of the only contact to the forum, the alleged contract

between Sonatrach and the decedents' Dallas engineering firm. Thus, the court required

The key analysis for our purposes appears in footnote 21, where the court addressed Sonatrach's argument that the existence of the contract with the decedents' firm would be insufficient to satisfy the "arising from" requirement of the jurisdictional statute. Sonatrach argued that a tort suit cannot arise from a contractual contact with the forum. The court responded with the following observation:

Logically, there is no reason why a tort cannot grow out of a contractual contact. In a case like this, a contractual contact is a "but for" causative factor for the tort since it brought the parties within tortious "striking distance" of one another. While the relationship between a tort suit and a contractual contact is certainly more tenuous than when a tort suit arises from a tort contact, that only goes to whether the contact is by itself sufficient for due process, not whether the suit arises from the contact.

652 F.2d at 1270, n. 21.

■ Our circuit, in *Cubbage v. Merchent*, implicitly adopted the "but for" test in analyzing whether a cause of action arises from a defendant's continuing efforts to solicit business in the forum state. Today, we make its adoption explicit.[7] We agree with the Fifth and Sixth Circuits that the proximate cause approach of *Marino* and *Pearrow* unnecessarily limits the ordinary meaning of the "arising out of" language. Moreover, application of a "but for" standard is more consistent with cases finding jurisdiction over manufacturers of defective goods sent into a forum state. *See, e.g., Hedrick v. Daiko Shoji Co.*, 715 F.2d 1355, 1358 (9th Cir.1983) (Oregon longshoreman's negligence claim against Japanese manufacturer of defective wire-rope splice held to arise from delivery of the splices into commerce). In contrast, application of the *Marino* standard would compel the conclusion that such claims arise from negligence in manufacture and de-

sign, rather than from forum-related activity.

The "but for" test is consistent with the basic function of the "arising out of" requirement—it preserves the essential distinction between general and specific jurisdiction. Under this test, a defendant cannot be haled into court for activities unrelated to the cause of action in the absence of a showing of substantial and continuous contacts sufficient to establish general jurisdiction. *See e.g., Scott v. Breeland*, 792 F.2d 925, 928 (9th Cir.1986) (an assault on a flight attendant occurring in a plane on the ground in Reno does not arise out of a defendant's musical performances or sales of records or tapes in California); *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion*, 614 F.2d 1247, 1254 (9th Cir.1980) (visits to California by a defendant's representatives to execute formal documents in prior transactions do not support the exercise of jurisdiction over a cause of action relating to subsequent, unrelated transactions). The "but for" test preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum.

A restrictive reading of the "arising out of" requirement is not necessary in order to protect potential defendants from unreasonable assertions of jurisdiction. The third prong of the *Data Disc* test provides that protection. If the connection between the defendant's forum related activities is "too attenuated," the exercise of jurisdiction would be unreasonable, and therefore in violation of due process.

Finally, we note that adoption of the more restrictive view of the "arising out of" requirement would preclude the exercise of jurisdiction in some cases where the plaintiff has established purposeful availment through continuing efforts to solicit business, some nexus between the cause of action and the defendant's forum-related

more information about the possible existence of that contract.

**7.** We note that where a defendant has only one contact with the forum state, a close nexus between its forum-related activities and the cause of the plaintiffs' harm may be required. *See*

*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir.1987). The case before us in which defendant had engaged in significant and continuing efforts to solicit business in the forum state is more like *Cubbage*. *See Cubbage*, 744 F.2d at 665.

activities, and the reasonableness of requiring the defendant to defend in the forum. Such an approach would represent an unwarranted departure from the core concepts of "fair play and substantial justice" which are central to due process analysis in the context of the exercise of personal jurisdiction.

Applying the *Cubbage* standard, we conclude that the Shutes' cause of action arose out of Carnival's contacts with Washington. The evidence is clear that Carnival's solicitation of business in Washington attracted the Shutes (through their travel agent) to the Carnival cruise. In the absence of Carnival's activity, the Shutes would not have taken the cruise, and Mrs. Shute's injury would not have occurred. It was Carnival's forum-related activities that put the parties within "tortious striking distance" of one another.

### 3. Reasonableness

■ After the first two prongs of the *Data Disc* test have been met, the court still must determine whether the exercise of jurisdiction over Carnival would be reasonable. In determining reasonableness, this circuit examines seven factors: the extent of purposeful interjection, the burden on the defendant to defend the suit in the chosen forum, the extent of conflict with the sovereignty of the defendant's state, the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum. *Federal Deposit Ins. Corp. v. British–American Ins. Co., Ltd.*, 828 F.2d 1439, 1442 (9th Cir.1987) The court must balance the seven factors to determine whether the exercise of jurisdiction would be reasonable. *Id.*

■ Once purposeful availment has been established, the forum's exercise of jurisdiction is presumptively reasonable. To rebut that presumption, a defendant "must present a compelling case" that the exercise of jurisdiction would, in fact, be unreasonable. *Burger King*, 471 U.S. at 476;

*Corporate Inv. Business Brokers v. Melcher*, 824 F.2d 786, 790 (9th Cir.1987).

Carnival does not attempt to rebut the reasonableness of the exercise of jurisdiction through an analysis of the seven factors. Rather, Carnival's main argument is that litigation in Washington was not reasonably forseeable because the passenger contract required suit to be brought in Florida, and because the contract for the cruise and the cruise itself were "consummated" outside of Washington. The latter argument is the same one raised and rejected in analyzing the purposeful availment requirement. The former ignores the fact that Carnival, by its business solicitation activities, has injected itself into the forum. Carnival has provided no authority for the view that a forum selection clause can be used to defeat jurisdiction of another state where exercise of that jurisdiction would otherwise be reasonable. An analysis of the seven factors used by this circuit suggests that jurisdiction over Carnival is reasonable in this case.

### *Extent of Purposeful Interjection*

This factor is closely tied to the issue of purposeful availment analyzed above. Recent cases indicate that this factor is no longer given any weight once it is shown that the defendant purposefully directed its activities toward the forum state. *Melcher*, 824 F.2d at 790.

### *Burden on the Defendant*

Although the defendant would prefer to litigate in Florida, in light of modern advances in transportation and communications, the burden of defending this suit in Washington would not be overwhelming. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); *Hirsch v. Blue Cross, Blue Shield*, 800 F.2d 1474, 1481 (9th Cir.1986). Moreover, this court must "examine the burden on the defendant in light of the corresponding burden on the plaintiff." *Sinatra*, 854 F.2d at 1199; *Brand v. Menlove Dodge*, 796 F.2d 1070 at 1075 (9th Cir.1986). It would be at least as burdensome for the Shutes to pursue this action in Florida as it would for Carnival to defend it in Washington.

This circuit recognizes that once minimum contacts have been established, inconvenience to the defendant is more appropriately handled not as a challenge to jurisdiction, but as a factor supporting a change in venue. *Sinatra,* 854 F.2d at 1199; *Hirsch,* 800 F.2d at 1481. Any inconvenience suffered by Carnival surely would not be so great as to constitute a deprivation of due process. *See, e.g., Sinatra,* 854 F.2d at 1199 (inconvenience to Swiss Clinic with one representative in the U.S. of defending lawsuit in California not so great as to constitute due process violation). Thus, this factor does not strongly favor dismissal.

*Conflict With Sovereignty of Defendant's State*

This factor is not dispositive here. The Supreme Court has noted that litigation against an alien defendant creates a higher jurisdictional barrier due to additional sovereignty concerns. *Asahi,* 480 U.S. at 115. However, despite the fact that Carnival is a Panamanian corporation, its principal place of business is in Florida. It asserts that Florida is the proper forum for this dispute. Therefore it is the possible conflict with Florida's sovereignty which is of concern here. In this type of situation, this circuit has stated that choice-of-law rules, rather than jurisdictional rules, are more appropriate to accommodate conflicting sovereignty interests. *Hirsch,* 800 F.2d at 1482.

*Forum State's Interest in Adjudicating the Dispute*

A state is deemed to have a strong interest in protecting its citizens against the tortious acts of others. *Cubbage,* 744 F.2d at 671. This interest continues even where the injury occurs outside the forum state's territorial limits. *Id.* (California has a manifest interest in protecting its citizens from tortious injury from health care providers who solicit patients from the state).

*Efficient Judicial Resolution*

This factor appears to favor the exercise of jurisdiction. Although the injury occurred in international waters off the coast of Mexico, the Shutes, their health care provider, and at least one of the witnesses to the accident all reside in Washington. At least one other witness resides in California, and it is unclear where other possible witnesses reside. As between Washington and Florida, the two states which are capable of exercising jurisdiction, Washington is the more efficient forum.

*Convenience and Effectiveness of Relief for Plaintiff*

The record indicates that the physical and financial burdens placed upon the Shutes by being forced to pursue this suit in Florida would be substantial. Dismissal of this suit from Washington effectively may prevent the Shutes from obtaining relief. This factor weighs heavily in favor of the exercise of jurisdiction. *Hirsch,* 800 F.2d at 1481.

*Existence of an Alternative Forum*

Carnival suggests that Florida is an available alternative forum, and the Shutes do not dispute this. However, in light of the practical difficulties noted in the discussions of efficient forum and convenience to plaintiffs, this factor cannot be said to weigh heavily in favor of dismissal.

We conclude that, on balance, these factors favor the exercise of jurisdiction. Certainly, Carnival has not presented a compelling case that the exercise of jurisdiction would be unreasonable. We therefore find that the Shutes have established personal jurisdiction over Carnival in Washington.

III. *The Effect of the Forum Selection Clause*

■■■ Carnival contends that even if it is subject to personal jurisdiction in Washington, the district court was required under 28 U.S.C. § 1406(a) to dismiss this action, or to transfer this action to a court located in Florida pursuant to the forum selection provision of the passenger ticket contract.[8]

---

**8.** Although the district court did not reach this issue, both parties request that, in the interest of judicial economy, this court determine the applicability of the forum selection provision on appeal, rather than remanding to the district court. Because some of the factual issues are

The Shutes argue that the forum selection provision is unreasonable, and should not be enforced in this case. Because of the parties' disparity in bargaining power and the impact of enforcing the forum selection provision on the Shutes' ability to pursue their case on the merits, we find that application of the forum selection provision would be unreasonable in this case.

■ Federal law governs the validity of the forum selection clause. *Manetti–Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 513 (9th Cir.1988). Thus, the starting point for analysis is the Supreme Court's decision in *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).[9] *The Bremen* dealt with a contract between an American corporation, Zapata, and a German corporation, Unterweser, for Unterweser to tow a Zapata oil rig from Louisiana to a point in the Adriatic Sea off Ravenna, Italy. The contract provided that any dispute arising from the contract be brought before the London Court of Justice. The rig was damaged while in the Gulf of Mexico, and Zapata brought suit in a federal district court in Florida. The Fifth Circuit affirmed the district court's denial of Unterweser's motion to dismiss, but the Supreme Court reversed.

The Court held that forum selection clauses are *prima facie* valid. 407 U.S. at 10, 92 S.Ct. at 1913, *see also Manetti–Farrow,* 858 F.2d at 514. Such a clause should not be set aside unless the party challenging it can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *The Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916; *see also Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,* 741 F.2d 273, 280 (9th Cir.1984) (absent some evidence submitted by the party opposing enforcement of the clause indicating fraud, undue influence, overweening bargaining power, or such serious inconvenience in litigating in the selected forum so as to deprive that party of a meaningful day in court, the provision should be respected as the expressed intent of the parties). However, *The Bremen* involved a large, complex commercial contract between two sophisticated parties. There was no evidence in *The Bremen* that the parties were in an unequal bargaining position. 407 U.S. at 12–13, & n. 14, 92 S.Ct. at 1914, & n. 14 ("this was not simply a form contract with boilerplate language that Zapata had no power to alter").

Although some courts have upheld analogous provisions contained in passenger ticket contracts,[10] in our view the evidence in this case suggests the sort of disparity in bargaining power that justifies setting aside the forum selection provision. First, there is no evidence that the provision was freely bargained for. To the contrary, the provision is printed on the ticket, and presented to the purchaser on a take-it-or-leave-it basis. *See Colonial Leasing Co. v. Pugh Bros. Garage,* 735 F.2d 380, 382 (9th Cir.1984) (applying Oregon law, the court found that a take-it-or-leave-it clause in a form contract is the type of unfair or unreasonable clause that should be invalidated); *Yoder v. Heinold Commodities, Inc.,* 630 F.Supp. 756, 759 (E.D.Va.1986) (in-

---

similar to those raised in the jurisdiction context, and because the record is sufficiently well-developed, we can decide the forum selection issue efficiently.

**9.** In *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) the Court held that the enforceability of a forum selection clause is only one of the factors to consider in making a 28 U.S.C. § 1404 transfer decision. '[T]he immediate issue before the district court was whether to grant respondent's motion to transfer the action under § 1404(a).' 108 S.Ct. at 2243. Carnival made no such motion in this case. Rather, Carnival argued solely on the basis of its forum selection clause that venue was improper, and that the case should therefore be dismissed or transferred pursuant to 28 U.S.C. § 1406(a). As this circuit noted in *Manetti-Farrow, Stewart* is inapplicable to such motions, and the analysis of *The Bremen* is controlling. 858 F.2d at 512–12 n. 2.

**10.** For example, in *Carpenter v. Klosters Rederi A/S,* 604 F.2d 11 (5th Cir.1979), the Fifth Circuit upheld a contractual time limitation for initiating suit that was included in a passenger contract ticket. The court focused entirely upon whether the passenger received adequate notice. The court did not address whether application of the time limitation was reasonable.

equality of bargaining power and use of form contracts are important factors in determining whether to enforce a forum selection clause); *Galli v. Travelhost, Inc.*, 603 F.Supp. 1260, 1263 (D.Nev.1985) (court refused to enforce forum selection clause where evidence indicated that the clause was not freely bargained for). Even if we assume that the Shutes had notice of the provision,[11] there is nothing in the record to suggest that the Shutes could have bargained over this language. Because this provision was not freely bargained for, we hold that it does not represent the expressed intent of the parties, and should not receive the deference generally accorded to such provisions.[12]

The fact that enforcement of the clause in this case would "be so gravely difficult and inconvenient" that the plaintiffs would "for all practical purposes be deprived of [their] day in court," *The Bremen*, 407 U.S. at 18, 92 S.Ct. at 1917, provides an independent justification for refusal to enforce the forum selection clause. *See Yoder*, 630 F.Supp. at 759; *Carefree Vacations, Inc. v. Brunner*, 615 F.Supp. 211, 214 (W.D. Tenn.1985) (inconvenience and lack of relationship between chosen forum and transaction in dispute sufficient to establish that forum selection clause is unreasonable). As we noted in analyzing the reasonableness of subjecting Carnival to suit in Washington, enforcement of the forum selection clause would be greatly inconvenient to the plaintiffs and witnesses. There is evidence in the record to indicate that the Shutes are physically and financially incapable of pursuing this litigation in Florida. We therefore decline to hold that the forum selection clause requires that this action be dis-

missed or transferred pursuant to 28 U.S.C. § 1406(a).

## IV. *Conclusion*

We find the exercise of jurisdiction in Washington to be consistent with principles of due process. We also find the forum selection clause requiring suit to be brought in Florida to be unenforceable in these circumstances. This case is therefore REVERSED and REMANDED.

---

11. This itself is doubtful, as the Shutes apparently did not have an opportunity to review the terms and conditions printed on the ticket until after the ticket was printed in Florida and mailed to them in Washington. Thus, the transaction was completed before the Shutes ever saw the ticket's terms and conditions.

12. Plaintiff also suggested that enforcement of the forum selection clause was barred by 46 U.S.C.App. § 183c, which provides that it is unlawful for vessel owners "to insert in any ... contract, or agreement any provision or limitation ... purporting ... to lessen, weaken, or avoid the right of any claimant to a trial by a

court of competent jurisdiction on the question of liability for such loss or injury, or the measure of damages therefor. All such agreements ... shall be null and void and of no effect." Because we find that the agreement is not enforceable as a matter of public policy, we express no opinion as to the effect of this statute on forum selection agreements. We do note, however, that this statute exemplifies congressional recognition of the unequal bargaining position of passengers and vessel owners, and the need for independent examination of the fairness of this type of contract.