[Nos. B050142, B050255. Second Dist., Div. Three. Aug. 21, 1990.]

CARNIVAL CRUISE LINES, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
MILDRED WILLIAMS et al., Real Parties in Interest.

**COUNSEL**

Graham & James and Allan A. Shenoi for Petitioner.

No appearance for Respondent.

Silver, McWilliams, Stolpman, Mandel, Katzman, Krissman & Elber, Donna Silver, Roman Mosqueda and Miguel P. Inumerable for Real Parties in Interest.

OPINION

DANIELSON, J.—Carnival Cruise Lines, Inc. (Carnival), petitions this court for writs of mandate directing the trial court to vacate its orders denying their motions to dismiss or stay in Williams v. Carnival Cruise Lines, Inc. (Super Ct. L.A. County No. SOC 96347) (*Williams*) and Secard v. Carnival Cruise Lines, Inc. (Super Ct. L.A. County No. SOC 96301) (*Secard*) and to enter new and different orders granting the motions.

We have consolidated the two proceedings since they present identical questions of law and fact.

We deny the petitions and discharge the alternative writs.

ISSUE PRESENTED

Tickets purchased by plaintiffs in the underlying actions (plaintiffs), for a roundtrip cruise from Los Angeles to Mexico and back on a ship owned and operated by Carnival, contained a forum-selection clause which provided that all disputes arising under or in connection with the ticket contract would be litigated, if at all, in a court located in Florida. The core issue presented is whether that forum-selection clause is enforceable to preclude plaintiffs from pursuing their actions in the Los Angeles, California Superior Court for damages sustained by them during their cruise as a result of the alleged negligence of Carnival.

We hold that, under the facts of this case, the forum-selection clause in the Carnival ticket contract is not enforceable.

FACTUAL AND PROCEDURAL STATEMENT

Plaintiffs assert that they received injuries through the negligence of Carnival during a seven-day sea cruise as passengers on a ship, the M/V Tropicale, owned and operated by Carnival. The voyage allegedly began on or about January 17, 1988, at Port of Los Angeles, was bound for Puerto Vallarta and other places in Mexico, and ended on or about January 24, 1988, at Port of Los Angeles.

In sum, plaintiffs allege that Carnival was negligent in that: (1) it knew of an impending severe storm, but failed to inform plaintiffs of the dangers thereof; (2) it proceeded to leave port despite the storm warning and without taking proper precautions to minimize the effects of the storm; (3) it failed to provide adequate safety equipment, e.g., life jackets and/or life vests for all passengers, or to distribute the safety equipment which was

aboard the ship to the passengers; (4) it failed to properly staff the vessel and to train the staff to meet the safety needs of the passengers in an emergency situation; (5) it failed to provide adequate safety instructions and directions to the passengers and crew; (6) it failed properly to inspect the ship and maintain it in a safe condition, e.g., the port engine and stabilizer did not function properly; (7) it failed to properly maintain, repair, inspect or otherwise control the M/V Tropicale and to assure its seaworthiness prior to and at the time of departure; and (8) it provided tug boat services which caused the M/V. Tropicale to hit the dock as it was being assisted in leaving the port.

On September 15, 1989, in *Williams*, Carnival appeared specially and filed a motion to dismiss or stay under Code of Civil Procedure section 410.30.[1] Carnival argued that dismissal or stay of the action was mandated on the ground that plaintiffs had agreed to litigate any controversy arising from the subject voyage in the State of Florida.

On September 25, 1989, a substantially identical special appearance and motion was filed by Carnival in *Secard*.

In support of the motions, Carnival referred to the following provisions in the ticket contracts between itself and plaintiffs:[2]

Clause 3(a) on page 1 of the contract read: "The acceptance of this ticket by the person or persons named hereon as passengers shall be deemed to be an acceptance and agreement by each of them of all of the terms and conditions of this Passage Contract Ticket."

Clause 8, also on page 1 of the ticket contract, read: "It is agreed by and between the passenger and the Carrier that all disputes and matters whatsoever arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida, U.S.A., to the exclusion of the Courts of any other state or country."

In his supporting declaration, dated September 14, 1989, at Miami, Florida, Bruce A. Jordan (Jordan), an assistant general counsel of Carnival, stated that Carnival is a Panamanian corporation with its principal place of

---

[1] Code of Civil Procedure section 410.30, subdivision (a), provides: "[W]hen a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just. The domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action."

[2] The record does not include a copy of any ticket. However, at oral argument, counsel for Carnival supplied the court with a facsimile of the subject tickets, which we have reviewed.

business in Miami, Florida. He further stated that all passenger claims are handled exclusively in its Miami offices.

In opposition filed January 31, 1990, the *Williams* plaintiffs asserted the forum-selection clause was unenforceable. They argued that the clause was unreasonable, not reasonably communicated to plaintiffs, and not freely bargained for. They further argued that enforcement of the clause was barred by federal statute (46 U.S.C. § 183(c)) and would violate the principles set forth in *The Bremen* v. *Zapata Off-Shore Co.* (1972) 407 U.S. 1, 18 [32 L.Ed.2d 513, 525, 92 S.Ct. 1907].

In her opposing declaration dated January 29, 1990, Donna Silver (Silver), an attorney for the *Williams* plaintiffs, stated: "[O]f the 238 plaintiffs, close to two-thirds of them (153) are California residents. Of the remaining 85 plaintiffs, close to one-half (38) are residents of Western states, including Oregon, Washington, Nevada, Arizona, New Mexico and Montana. The remaining 47 plaintiffs are from various Midwest and East coast states, Canada and Hawaii. Not a single plaintiff is a resident of Florida."

She further stated that the one plaintiff claiming awareness of the forum-selection clause prior to departure did not have cancellation insurance. The tickets were subject to cancellation charges by Carnival.

With respect to receipt of tickets, Silver stated: at least 44 of the plaintiffs received their tickets upon actual embarking of the vessel on January 17, 1988. At least five plaintiffs received boarding passes only, no ticket at all. At least six plaintiffs received their tickets on the day of departure, four of whom received them two hours before embarkation, and at least four plaintiffs received the tickets the day before the cruise.

With respect to inconvenience to plaintiffs, Silver stated: at least 30 plaintiffs asserted they are physically unable to travel to Florida due to age and medical problems. At least one-half of the remaining plaintiffs would suffer hardship and inconvenience due to health and medically related problems, dependency of minors and other family members, and work commitments. At least 145 plaintiffs, over one-half of all plaintiffs in *Williams*, contend they are financially unable to pursue their action in Florida.[3]

In opposition filed February 7, 1990, the *Secard* plaintiffs took the position that enforcement of the forum-selection provision would be unreason-

---

[3] On April 3, 1990, Carnival filed objections to the contents of the Silver declaration. In response Silver filed a declaration dated April 9, 1990, in which she stated that the factual information set forth in her declaration above came from her personal review of communications between plaintiffs and herself. Plaintiffs would substantiate the information in question, i.e., paragraphs 4-12, when they are deposed or in response to interrogatories.

able for the reasons that: (1) there was no evidence that the provision was freely bargained for; and (2) plaintiffs would for all practical purposes be deprived of their day in court since enforcement of the provision would be gravely difficult and inconvenient.

In his opposing declaration Miguel P. Inumerable, the *Secard* plaintiffs' attorney, stated that among the witnesses who would be inconvenienced by a Florida forum are the physicians who treated the *Secard* plaintiffs and the employees of the United States weather service who reside and are employed in California.

In their respective declarations the *Secard* plaintiffs, Antoinette, Ed, Fred, George, and Joan, each stated that he or she was treated for the injuries sustained during the voyage by Dr. Peter Yatar, of the City of Industry, California, and Dr. Dale Kellon, in Covina, California.

In its reply filed April 3, 1990, in both cases Carnival asserted the forum-selection clause was enforceable. It argued that the passengers had adequate notice of the terms of the contract, including the forum-selection clause, since there was adequate warning of the ticket's terms, and thus, it must be presumed that the passengers consented to the clause. It further argued that enforcement of the clause was not unreasonable or unjust since plaintiffs would have a difficult time showing that they would be denied their day in court in Florida.

In his supporting declaration, executed March 29, 1990, Lawrence D. Winson (Winson),[4] general counsel and secretary for Carnival, stated that Carnival chose one specific venue for litigation against it in order to prevent it from being sued in varied and far-flung jurisdictions by thousands of passengers. Carnival inserted the forum-selection clause to create a certainty, not to inconvenience passengers or arbitrarily, so that it would not face global litigation.

Winson further stated that Florida was selected as the venue, because its head office, legal department, and passenger claims processing personnel are all located there. Also located there were seven of its eight vessels which sail from Florida and Caribbean ports.

---

[4] The motions to stay or dismiss were not made on the grounds of lack of personal jurisdiction or forum non conveniens. However, in its petitions Carnival makes some arguments and sets forth statements in the declarations of Winson and Jordon in favor of the enforcement of the forum-selection clause which really pertain only to a claim of forum non conveniens and the bar of lack of personal jurisdiction, e.g., lack of minimum contracts with California. (See, e.g., *Dialysis at Sea, Inc.* v. *Superior Court* (1989) 216 Cal.App.3d 788, 792-796 [265 Cal.Rptr. 71].)

Winson also declared that if any passenger or travel agent requested Carnival to provide them with a copy of the terms and conditions of the ticket contract in order for them to evaluate the terms and decide whether they wanted to travel with Carnival, Carnival would have provided them with a copy.[5]

On April 12, 1990, following a hearing, the court denied the motions in the *Williams* and *Secard* cases. The court reasoned: "I cite the case cited by moving party, which is Full-Sight versus Soft-Lenses. First you have a contract [of] adhesion and, in my view, it would be, under that case, both unreasonable and unjust to transfer these cases for the benefit of one defendant in Florida, as opposed to the convenience of two hundred thirty-eight or more plaintiffs in California, where the vessel left a California port, the storm occurred in the Pacific, whatever medical treatment they received on ship was on an emergency basis, and upon the return was rendered here. [¶] This is the logical and the just place for the venue to be laid in this case."[6]

## DISCUSSION

The sole issue presented by this writ proceeding is whether enforcement of the forum-selection clause would be unfair, unreasonable or unjust or otherwise invalid. We hold that the forum-selection clause, which designates Florida as the proper venue, is unenforceable on the grounds that enforcement would be "unfair, unjust, or unreasonable," and the clause is also invalid as the product of overreaching.

Federal law governs the validity of the forum-selection clause in this instance since a passenger ticket contract for an ocean voyage constitutes a contract under maritime law. (See, e.g., *Hodes* v. *S.N.C. Achille Lauro ed. Altri-Gestione* (3d Cir. 1988) 858 F.2d 905, 909; *Shute* v. *Carnival Cruise Lines* (9th Cir. 1990) 897 F.2d 377, 386.)

It is established that a forum-selection clause is prima facie valid and that such a clause should not be set aside unless the party challenging it can "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." (*The Bremen* v. *Zapata Off-Shore Co.*, supra, 407 U.S. 1, 15 [32 L.Ed.2d 513, 523]; *Shute* v. *Carnival Cruise Lines*, supra, 897 F.2d 377, 388.)

---

[5] No evidence was submitted by Carnival with regard to the procedure, if any, for negotiation of the terms of the ticket contract, e.g., the forum-selection clause. At oral argument counsel for Carnival conceded he knew of none.

[6] The case referred to above by the court is *Full-Sight Contact Lens* v. *Soft Lenses, Inc.* (S.D.N.Y. 1978) 466 F.Supp. 71.

In *The Bremen* the United States Supreme Court upheld a forum-selection clause designating the London Court of Justice as the proper venue for any dispute arising from the contract between Zapata, an American corporation, and Unterwesser, a German corporation, whereby Unterwesser agreed to tow a Zapata oil rig from Louisiana to some point in the Adriatic Sea off Ravenna, Italy. After the rig was damaged in the Gulf of Mexico, Zapata brought an action in a Florida United States district court. In upholding the forum-selection clause *The Bremen* court found that Zapata had failed to meet its burden to "clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." (*The Bremen v. Zapata Off-Shore Co., supra,* 407 U.S. 1, 15 [32 L.Ed.2d 513, 523].)

The *Shute* court found *The Bremen* to be factually distinguishable, noting: ". . . *The Bremen* involved a large, complex commercial contract between two sophisticated parties. There was no evidence in *The Bremen* that the parties were in an unequal bargaining position. [Citation.]" (*Shute v. Carnival Cruise Lines, supra,* 897 F.2d 377, 388.)

In *Shute* the court had before it the identical forum-selection clause involved in the proceedings now before this court. (897 F.2d at p. 379.) The *Shute* court held that this clause was unenforceable on two independent grounds: "First, there is no evidence that the provision was freely bargained for" (*id.* at p. 388); and second, "[t]he fact that enforcement of the clause in this case would 'be so gravely difficult and inconvenient' that the plaintiffs would 'for all practical purposes be deprived of [their] day in court,' [citation] provides an independent justification for refusal to enforce the forum selection clause. [Citation.] . . . There is evidence in the record to indicate that the Shutes are physically and financially incapable of pursuing this litigation in Florida." (*Id.* at p. 389.)

Based on our review of the record and applicable law we conclude that the trial court was correct in finding that the subject forum-selection clause was invalid as the product of overreaching, i.e., a contract of adhesion, and was unenforceable in that it would be unreasonable and unjust for venue to lie in Florida.

In the present cases, as in *Shute,* there is no evidence that the forum-selection clause was freely bargained for by the plaintiffs; thus it constitutes an instance of untenable "overreaching" by Carnival. As the *Shute* court aptly reasoned: "To the contrary, the provision is printed on the ticket, and presented to the purchaser on a take-it-or-leave-it basis . . . . Even if we assume that the Shutes had notice of the provision, there is nothing in the record to suggest that the Shutes could have bargained over this language.

Because this provision was not freely bargained for, we hold that it does not represent the expressed intent of the parties, and should not receive the deference generally accorded to such provisions." (*Shute* v. *Carnival Cruise Lines, supra,* 897 F.2d at pp. 388-389, fns. omitted.)

An independent, alternative basis for holding the forum-selection clause to be unenforceable is our conclusion that enforcement of the clause "would 'be so gravely difficult and inconvenient' that the plaintiffs would 'for all practical purposes be deprived of [their] day in court.' " (*Shute* v. *Carnival Cruise Lines, supra,* 897 F.2d at p. 389, quoting from *The Bremen, supra,* 407 U.S. at p. 18 [32 L.Ed.2d at p. 525].) The evidence reflects that some of the plaintiffs would be physically and financially incapable of pursuing their action against Carnival in Florida.

DECISION

The petitions for writs of mandate are denied. The alternative writs, having served their purpose, are discharged.

Klein, P. J., and Croskey, J., concurred.

Petitioner's application for review by the Supreme Court was denied November 15, 1990.