Terrance HIRSCH and Margaret Hirsch, Plaintiffs-Appellants,

v.

BLUE CROSS, BLUE SHIELD OF KANSAS CITY, Defendant-Appellee.

No. 85–6277.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 1986.

Decided Sept. 29, 1986.

---

Walter Tribbey, Robert W. Nowack, Law Offices of Walter Tribbey, Ontario, Cal., for plaintiffs-appellants.

Daniel Garcia, Sally Kingsberg, Munger, Tolles, & Rickershauser, Los Angeles, Cal., for defendant-appellee.

Before GOODWIN, TANG, and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Terrance and Margaret Hirsch appeal the district court's dismissal of their action against Blue Cross, Blue Shield of Kansas City. The district court held that Blue Cross did not have sufficient contacts with the State of California to permit an exercise of personal jurisdiction. We reverse.

## I. BACKGROUND

The facts in this case are not in dispute. Defendant Blue Cross, Blue Shield of Kansas City (Blue Cross) is incorporated in Missouri and is also authorized to conduct business in Kansas. Its principal place of business is in Missouri. Southwest Freight Lines, Terrance Hirsch's former employer, has its home office in Kansas City, Kansas.

Blue Cross is not licensed nor authorized to do business in states other than Kansas and Missouri. Blue Cross enters into pre-paid health care agreements only with employers or individuals who do business in or reside in one of a limited number of counties in Missouri or Kansas.

In January 1983, Southwest contracted with Blue Cross to provide group health care coverage for Southwest's employees. Under the Enrollment Agreement, all of Southwest's full-time employees were eligible to participate. The eligibility clause did not contain any geographical exclusions, nor did it restrict participation to employees as of the Agreement's execution date. At the time Blue Cross and Southwest signed the contract, Southwest had 64 employees, forty percent of whom lived outside the Kansas and Missouri area. Although the employees were located in several states, none of them lived in California.

After the contract was signed, Southwest hired Terrance Hirsch, who with his wife, lived in California. During the period covered by the Agreement, Southwest added the Hirsches and two other new Califor-

nia employees to the Southwest group policy. Terrance Hirsch filled out enrollment application forms in California and returned them to Southwest's Kansas City office. In return, the Hirsches received a Blue Cross membership card, generated by Blue Cross offices in Kansas City, with his California address written on its face. Southwest deducted health care premiums from Hirsch's payroll checks, and forwarded the payments to Blue Cross.

Starting in October 1983, the Hirsches' daughter received medical treatment in California. The Hirsches allege that in March 1984, Blue Cross refused to pay incurred medical expenses. The Hirsches filed an action in California state court, claiming breach of contract and bad faith.

Blue Cross removed the action to federal court on diversity grounds, and then filed a motion under Fed.R.Civ.P. 12(b)(2) to dismiss for lack of personal jurisdiction. The district court concluded that the case presented a "tough call," and granted the motion. The Hirsches timely appeal.

## II. DISCUSSION

The district court's determination that an exercise of personal jurisdiction would violate due process is a question of law, reviewable de novo when the underlying facts are undisputed. *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1396 (9th Cir. 1986). The burden rests with the party seeking to invoke the court's jurisdiction to establish that jurisdiction exists. *Scott v. Breeland,* 792 F.2d 925, 927 (9th Cir.1986).

To establish personal jurisdiction, the plaintiff must show that the law of the forum state confers jurisdiction, and that its exercise would not be inconsistent with federal due process. *Haisten,* 784 F.2d at 1396.

Cal.Civ.Pro.Code § 410.10 (West 1973), provides that the court "may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States." This statute confers jurisdiction that is coextensive with federal due process. *See Scott,* 792 F.2d at 927; *Haisten,* 784 F.2d at 1396.

In order for personal jurisdiction to lie, a defendant must have "meaningful 'contacts, ties, or relations'" with the forum. *See Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2181–82, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945)); *Haisten,* 784 F.2d at 1396. These ties may be formed in one of two ways.

If the non-resident defendant's activities in the state are "continuous and systematic," or "substantial," the court may assert general jurisdiction over a cause of action, even if it is unrelated to the defendant's forum activities. *Scott,* 792 F.2d at 927; *see Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 & n. 9, 104 S.Ct. 1868, 1872 & n. 9, 80 L.Ed.2d 404 (1984). If the defendant's contacts are neither substantial, nor continuous and systematic, but the cause of action arises out of or is related to the defendant's forum activities, "limited" or "specific" personal jurisdiction exists. *Scott,* 792 F.2d at 927.

This court traditionally has applied a three-part test to determine if limited jurisdiction exists:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) the claim must be one which arises out of or results from the defendant's forum-related activities.

(3) exercise of jurisdiction must be reasonable.

*Haisten,* 784 F.2d at 1397. In *Haisten,* we noted certain Supreme Court refinements to the purposeful availment and reasonableness prongs of the limited jurisdiction test that we consider in our analysis. *Id.*

## A. General Jurisdiction

■ To determine if a defendant's activities qualify as "continuous and systematic" or "substantial" we examine all of the defendant's activities that impact the state, including whether the defendant makes sales, solicits or engages in business, serves the state's markets, designates an agent for service of process, holds a license, has employees, or is incorporated there. See Helicopteros, 466 U.S. at 411, 104 S.Ct. at 1870–71; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980); Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 445–49, 72 S.Ct. 413, 418–20, 96 L.Ed. 485 (1952); Cubbage v. Merchant, 744 F.2d 665, 667–68 (9th Cir. 1984), cert. denied, 470 U.S. 1005, 105 S.Ct. 1359, 84 L.Ed.2d 380 (1985).

■ Blue Cross of Kansas City is not authorized nor licensed to do business in California; it is not registered with the California Department of Insurance; it does not maintain an office or mailing address there; it has no agent for service of process, sales representatives, or employees in California; and it pays no California taxes. The company's only proven contact with California was through its relationship with the Hirsches and Southwest's other California employees. Neither party contends that these contacts with California are sufficient to permit the exercise of general jurisdiction in this case. We also conclude that they are not. Therefore, our only task is to ascertain whether limited jurisdiction exists.

## B. Limited Jurisdiction

### 1. Purposeful Availment

■ The due process clause protects a defendant's right to receive fair warning that his actions might subject him to suit in a given jurisdiction. This safeguard allows him to structure his conduct with a degree of assurance as to what will flow from his conduct. See Burger King, 105 S.Ct. at 2181–82. Thus, the court's focus in due process analysis is on the defendant's rela-

tionship to the forum, and the litigation, Cubbage, 744 F.2d at 668 (citing Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)), rather than the plaintiff's relationships to them, see Rush v. Savchuk, 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980). As the court stated in Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958),

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State ... [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State...."

Therefore, the purposeful availment analysis turns upon whether the defendant's contacts are attributable to "actions by the defendant himself," or conversely to the "unilateral activity of another party." Burger King, 105 S.Ct. at 2183–84 (emphasis in original); see also Hunt v. Erie Insurance Group, 728 F.2d 1244, 1247 (9th Cir.1984) ("To characterize [plaintiff's] decision [to move to California] as an intentional action by [defendant], for purposes of meeting the purposeful availment requirement of due process, would frustrate the very policy behind that requirement: ensuring that a 'defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there' ") (quoting World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567) (emphasis in Hunt).

■ The purposeful availment prong is satisfied when a defendant takes deliberate actions within the forum state or creates continuing obligations to forum residents. Burger King, 105 S.Ct. at 2184. It is not required that a defendant be physically present within, or have physical contacts with, the forum, provided that his efforts are "purposefully directed" toward forum residents. Id.; Haisten, 784 F.2d at 1397 (jurisdiction exists when the only contact is the " 'purposeful direction' of a foreign act

having *effect* in the forum state") (emphasis in original); *Pacific Atlantic Trading Co. v. M.V. Main Express,* 758 F.2d 1325, 1330 (9th Cir.1985) (recognizing this rule, but advocating caution in exercising jurisdiction over foreign defendants for foreign acts with forum effects); *see Travelers Health Association v. Virginia ex rel. State Corporation Commission,* 339 U.S. 643, 648, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950) (refusing to focus on the place of contracting and instead, concentrating on the consequences of the contractual obligation in the place where the insured resides and on that state's interest in ensuring that insurance company obligations are fulfilled).

In this case, the parties characterize Blue Cross's California connection in diametrically opposite ways. The Hirsches contend that Blue Cross deliberately and knowingly accepted the Hirsches · application for health care coverage and regularly collected premiums from them, thus purposefully availing itself of the privileges of conducting activities in California. *See McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). Blue Cross argues that its contacts with California are attributable solely to Southwest's unilateral action in hiring new employees there—an event that did not occur until after Blue Cross signed the Enrollment Agreement—and therefore that it would be unfair to hale the company into court there. *See Hunt,* 728 F.2d at 1247.

We conclude that Blue Cross's depiction of itself as a helpless bystander, unable to control the selection of insureds, is misleading. Blue Cross freely negotiated the Enrollment Agreement with Southwest, to cover all of its employees, knowing that Southwest employed people nationwide. The contract provisions confirm Blue Cross's awareness that covered individuals would be located outside its licensed business area.[1] It is true that Blue Cross might not have foreseen at the time it signed the Enrollment Agreement that its contract with Southwest would have effects in California. However, when Southwest hired Terrance Hirsch, he filled out a membership application, which became part of the Southwest-Blue Cross contract.[2] He sent the application from California, using a California address, and received a Blue Cross card at his residence in the forum state. Therefore, at that time, Blue Cross not only could foresee that its actions would have an effect in California, but also that the effect "was contemplated and bargained for." *Haisten,* 784 F.2d at 1398; *see Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984) (defendants reasonably could anticipate being sued in California for alleged wrongdoing that was intentionally directed at California residents and that had effects there); *Keeton v. Hustler Magazine. Inc.,* 465 U.S. 770, 780, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984) ([P]laintiff's residence in the forum may, because of defendant's relationship with the plaintiff, enhance defendant's contacts with the forum. Plaintiff's residence may be the focus of the activities of the defendant out of which the suit arises").

Blue Cross, through its *own actions* in agreeing to provide coverage to Southwest

1. The Certificate of Coverage, which constitutes part of the contract, states in relevant part:
   If you disagree with our decision regarding the payment of your claim, you may call us or write us, or you may contact your state insurance department.
        *    *    *    *    *    *
   We may change the terms and conditions of the Contract:
   (1) to conform with the statutes of the state in which the contract is issued or issued for delivery;
        *    *    *    *    *    *

   Laws of the state in which the contract was issued or issued for delivery may conflict with some of its provisions. If so, then those provisions are automatically changed to conform to at least the minimum requirements of such laws.

2. The Enrollment Agreement states:
   The Certificate, Benefit Schedule, Enrollment Agreement, *Membership Applications,* and any amendments *constitute the entire contract* between the Employer and the Companies (emphasis added).

and its California employee, Terrance Hirsch, created a continuing obligation to them, and a substantial connection with California. *See Burger King,* 105 S.Ct. at 2184;[3] *Eli Lilly and Co. v. Home Insurance Co.,* 794 F.2d 710, 720–21 (D.C.Cir. 1986) (insurer has a commercial interest in knowing its insured's contacts with the forum state; presumably, premiums reflect the risk exposure).

Although Blue Cross makes much of its physical absence from California, and the fact that contract negotiations between it and Southwest occurred outside of California, this is not determinative. It is clear that Blue Cross's foreign acts were purposefully directed at a California resident. *Haisten,* 784 F.2d at 1399 (rejecting a proposed limitation of the purposeful direction doctrine to the products liability area and stating that "application of the foreign-act-with-forum-effect standard [is] appropriate in the insurance context ... the state has a manifest interest in providing its residents with a forum for reaching insurance companies who refuse to honor legitimate claims"); *Flynt Distributing Co. v. Harvey,* 734 F.2d 1389, 1393 (9th Cir.1984) (corporation was subject to jurisdiction in California even though the contract was negotiated in New York).

We conclude that Blue Cross, by voluntarily and knowingly obligating itself to provide health care coverage to Southwest's California employees, in exchange for premiums partly derived from premiums paid by California residents, purposefully availed itself of the benefits and protections of that forum.[4] *Compare McGee,* 355 U.S. at 223, 78 S.Ct. at 201 (insurer offered to insure California resident, delivered contract to California, and accepted premiums from there; "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State") *with Hunt,* 728 F.2d at 1247 (California could not exercise jurisdiction over East Coast insurer, when policyholder's passenger was injured in an accident in Colorado and the injured passenger unilaterally decided to go to California for treatments).

### 2. Arising Out of Forum-Related Activities

The Hirsches claims against Blue Cross arise out of Blue Cross's alleged breach of the contract to provide health care coverage to them. Because this contract constitutes Blue Cross's contacts with California, the Hirsches satisfy this element of the limited jurisdiction test. *See McGee,* 355

---

**3.** We recognize that the signing of a contract, alone, may not constitute a sufficient "contact" for due process purposes. Negotiations that precede the contract, combined with the future course of dealing between the parties, may determine whether minimum contacts exist. *See Burger King,* 105 S.Ct. at 2185–86. Thus, we look not only at the exchange of a membership application and membership card through the mails, but at the nature of Blue Cross's ongoing commitment to the Hirsches to honor contractual obligations and pay for needed medical care.

**4.** Blue Cross relies extensively on a California case, *P.W. Collections, Inc. v. Thiebaut,* 178 Cal. App.3d 1157, 224 Cal.Rptr. 277 (1986). The facts of *Thiebaut,* while similar in some respects to those of this case, are not identical. The plaintiff in *Thiebaut* had terminated her employment, through which she had been covered under a Blue Cross group policy, and had moved to California. The plaintiff received medical care in California, and then disputes arose over whether Blue Cross had accepted her for coverage under an individual conversion plan. Eventually, she filed a suit, which was dismissed for lack of personal jurisdiction. The Court of Appeals affirmed. The Court examined the plaintiff's evidence, and concluded that it could not exercise limited jurisdiction. The court stated that the plaintiff had attached a declaration and supporting correspondence, "the meaning of which is difficult to ascertain," and which had been written after the parties were threatening litigation. Moreover, the plaintiff's documents did not comply with the California Rules of Court. *Thiebaut,* 224 Cal. Rptr. at 279. Thus, although the court held that there was no purposeful availment, its decision was influenced by the plaintiff's inadequate and flawed pleadings. For this reason, we find *Thiebaut* unpersuasive. *See Data Disc, Inc. v. Systems Technology Associates,* 557 F.2d 1280, 1286–87 & n. 3 (9th Cir.1977) (federal law rather than state law is controlling on the issue of due process, although state cases may be persuasive authority).

U.S. at 223, 78 S.Ct. at 201; *Haisten*, 784 F.2d at 1400.

### 3. Reasonableness

■ The test for ascertaining the reasonableness of subjecting the defendant to jurisdiction is not mechanical. *Insurance Company of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1270 (9th Cir. 1981). The relevant factors that the court examines may include: the extent of the defendant's purposeful interjection into the forum state's affairs; the burdens on the defendant; the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several states in furthering fundamental substantive social policies. *See Burger King*, 105 S.Ct. at 2184; *Haisten*, 784 F.2d at 1400; *Cubbage*, 744 F.2d at 670.

■ In *Haisten* and *Burger King*, the courts noted that a strong showing of reasonableness may lessen the required showing of minimum contacts. Moreover, once purposeful direction is documented, there exists a presumption of reasonableness, which the defendant may rebut only by presenting compelling reasons why jurisdiction would be unreasonable. *See Burger King*, 105 S.Ct. at 2184–85; *Haisten*, 784 F.2d at 1400.

Because Blue Cross purposefully directed its activities toward California, it bears the burden of presenting compelling reasons why jurisdiction would be unfair in this instance. It has not done so. As in *Haisten*, we conclude that Blue Cross's purposeful direction of its activities toward California residents argues against finding that it did not deliberately or "purposefully interject" itself into California affairs. *Haisten*, 784 F.2d at 1401.

In this case, the Hirsches have alleged that Blue Cross refused to pay claims, and is guilty of a tortious breach of an insurance contract. California's interest is exceptionally strong. California has a mani-

fest interest in providing its residents with effective redress against insurers who refuse to pay claims. *McGee*, 355 U.S. at 223, 78 S.Ct. at 201; *Haisten*, 784 F.2d at 1401; *see* Cal.Ins.Code §§ 790.03(h) and 1610 (West 1972 & Supp.1986). California also has a strong interest in protecting its citizens against the tortious conduct of others. *Cubbage*, 744 F.2d at 671; *Data Disc*, 557 F.2d at 1288–89.

In addition, the Hirsches' interests clearly favor selecting the California forum. Witnesses who would testify to the need for, and legitimacy of the medical treatment received would be located in California. The costs of litigating outside of California would be significant. As courts have observed, plaintiffs would be severely disadvantaged if forced to "follow the insurance company to a distant State in order to hold it legally accountable ... thus in effect making the company judgment proof." *McGee*, 355 U.S. at 223, 78 S.Ct. at 201; *see Travelers Health*, 339 U.S. at 648–49, 70 S.Ct. at 929–30 (insurance policyholders rarely could afford the cost and inconvenience of a law suit in the insurer's home state; in addition, witnesses more likely would live, and investigations would be conducted, where the insured resides).

■ Although it would be somewhat burdensome for Blue Cross to litigate in California, since its employees and evidence are located elsewhere, modern transportation reduces this burden. *Marina Salina Cruz*, 649 F.2d at 1271. In addition, inconvenience to a party who has minimum contacts with the forum often more appropriately is handled through changes in venue, and not by refusing to exercise jurisdiction. *Burger King*, 105 S.Ct. at 2185 & n. 20, 2188. Unless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction. *Id.* at 2188; *McGee*, 355 U.S. at 224, 78 S.Ct. at 201.

Blue Cross argues that the interests of California must give way to those of Kansas and Missouri, since those two States

regulate Blue Cross's insurance practices and premiums. It also theorizes that application of California's insurance laws that protect insureds liberally and provide punitive damages would upset insurance actuarial schemes in Kansas.

It is true that Kansas and Missouri have an interest in this litigation. As courts previously have observed, however, choice-of-law rules, rather than jurisdictional tests are designed to accommodate these concerns. *Burger King*, 105 S.Ct. at 2188 n. 26 (in minimum contacts analysis, one assumes that two states' interests will conflict); *Haisten*, 784 F.2d at 1401–02; *Cubbage*, 744 F.2d at 670.

We hold that Blue Cross purposely availed itself of the benefits and protections of California, and it has failed to overcome the presumption that it is reasonable to subject it to jurisdiction in that forum.

The district court's decision is RE-VERSED.