**Edith P. CROSS, Plaintiff,**

**v.**

**KLOSTER CRUISE LINES, LIMITED, a Bermuda corporation; et al., Defendants.**

**Civ. No. 95–406–JO.**

United States District Court, D. Oregon.

July 11, 1995.

Donald C. McClain, McClain & Rayburn, Tigard, OR, for plaintiff.

Kim Jefferies, Wood Tatum Sanders & Murphy, Portland, OR, for defendants.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

Plaintiff Edith Cross brings this action in admiralty against defendants Kloster Cruise Lines, Limited ("Kloster") [1], John Doe, M.D., and Jane Doe, R.N., alleging claims for personal injury arising out of treatment plaintiff received for a poisonous spider bite while aboard the cruise ship M/S Windward, which was operated by Kloster.

The case is before me on Kloster's motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b) (# 7).[2] Kloster asserts three grounds for dismissal: (1) this court lacks personal jurisdiction over Kloster in Oregon; (2) plaintiff is bound by a forum selection clause in her ticket contract, which requires transfer to Dade County, Florida; and (3) plaintiff's complaint fails to state a claim under maritime law. After considering the parties' arguments and the evidence submitted, Kloster's motion is GRANTED IN PART, DENIED IN PART, and MOOT IN PART.

## FACTUAL BACKGROUND

Plaintiff, a 78 year-old widow and a resident of Portland, Oregon, and members of her church arranged to take a cruise aboard

---

1. Plaintiff also names Norwegian Cruise Lines, Inc., as a defendant, but Norwegian apparently is only an assumed business name of Kloster and has no separate corporate entity.

2. Kloster made a special appearance for purposes of bringing this motion.

the vessel Windward. Plaintiff booked the cruise through Journeys World Travel ("Journeys") in Portland.[3] Plaintiff paid for her ticket through Journeys, and Norwegian Cruise Lines ("Norwegian"), a division of Kloster,[4] issued the ticket in Coral Gables, Florida. Norwegian sent plaintiff's ticket and those of the other members of her travel group to Journeys by courier on April 11 and 14, 1994. Plaintiff received her ticket on April 14 or 15, 1994. Plaintiff traveled to San Juan, Puerto Rico, where she boarded the Windward on April 24, 1994, for passage to Los Angeles, California.

Plaintiff alleges that during the cruise, she was bitten by a brown recluse spider. Plaintiff further alleges that the medical treatment she received for the bite was inadequate, that she was refused access to a medical doctor, and that she suffered personal injuries as a result. Plaintiff seeks recovery of compensatory and punitive damages on theories of negligence, medical negligence, and outrageous conduct arising out of these events.

Evidence presented by the parties establishes that Kloster is a Bermuda corporation with its principal place of business in Coral Gables, Florida. Kloster is not registered to do business in Oregon, it neither owns nor rents property in Oregon, and it has never been assessed or paid taxes in Oregon. Kloster has no agent for service of process in Oregon, maintains no bank accounts here, and has no business office in Oregon.

Kloster does, however, have an agent in Oregon, Judy Hanns, the district sales manager for Norwegian. Hanns' sales territory includes Oregon, Idaho, Montana, Hawaii and Southwest Washington. Among other relevant facts, Hanns lives in Portland, uses a business card identifying her as Norwegian's district manager, and maintains a Portland telephone listing. Plaintiff has submitted evidence that Hanns' Portland number is answered by a recording that states: "Hi, you have reached Judy from Norwegian Cruise Lines." Hanns participated in the promotion of plaintiff's cruise, and encouraged the group to purchase tickets.

Hanns has filed Oregon income tax returns for income earned as Norwegian's employee. Her salary includes a bonus, and her 1994 bonus apparently was based on sales that included plaintiff's ticket.

A sample ticket was not used as part of the sales promotion for the cruise. The cancellation and refund policy was not discussed. Plaintiff purchased a trip insurance policy, but testified that she thought the policy principally provided medical coverage, and did not understand that it covered cancellations.

## DISCUSSION

Kloster has, for now, withdrawn its motion to dismiss the complaint for failure to state a claim. Accordingly, that portion of Kloster's motion is MOOT.

In its reply memorandum, Kloster acknowledges that the question of personal jurisdiction "has become fact intensive * * *." Reply Memorandum, p. 9. I agree, and also agree with Kloster that it is appropriate to determine whether the forum selection clause is enforceable before reaching the issue of personal jurisdiction.

### I. *The Forum Selection Clause*

In *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), the United States Supreme Court reversed a Ninth Circuit decision in which the court held that a forum selection clause in a printed form ticket was unenforceable because it was not "freely bargained for." *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 388 (9th Cir.1990), *rev'd Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). In rejecting the proposition that a forum selection clause is unenforceable merely because it was not the subject of bargaining, the Supreme Court emphasized that such clauses are nonetheless subject to judicial scrutiny for fundamental fairness. *Shute,* 499 U.S. at 593–94, 111 S.Ct. at 1527–28.

---

**3.** Journeys has no corporate relationship with Kloster.

**4.** *See* footnote 1, *supra.*

In a post-*Shute* decision, *Dempsey v. Norwegian Cruise Line*, 972 F.2d 998 (9th Cir. 1992), the Ninth Circuit examined another Norwegian ticket that was virtually identical to the one at issue in this case. The Ninth Circuit confirmed that what the *Shute* court meant by "fundamental fairness" was the absence of fraud, bad faith, or overreaching. *Dempsey*, 972 F.2d at 999; *see also Shute*, 499 U.S. at 594, 111 S.Ct. at 1528. In this case, as in *Dempsey*, plaintiff has presented no evidence that Norwegian acted in bad faith or engaged in fraud or overreaching. Instead, the issue is whether Norwegian "reasonably communicated" the existence of the forum selection clause to plaintiff. *See Dempsey*, 972 F.2d at 999, *citing Deiro v. American Airlines, Inc.*, 816 F.2d 1360 (9th Cir.1987).

■ In *Deiro*, the court adopted a two-prong "reasonable communicativeness" test formulated by the First Circuit in *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861, 863–64 (1st Cir.1983). Under that analysis, the court first examines the physical characteristics of the ticket, " '[f]eatures such as size of type, conspicuousness and clarity of notice on the face of the ticket, and the ease with which a passenger can read the provisions in question * * *.' " *Deiro*, 816 F.2d at 1364, *quoting Shankles*, 722 F.2d at 864. Second, the court must examine the "circumstances surrounding the passenger's purchase and subsequent retention of the ticket * * *"; *i.e.*, any "extrinsic factors indicating the passenger's ability to become meaningfully informed of the contractual terms at stake." *Deiro*, 816 F.2d at 1364, *quoting Shankles*, 722 F.2d at 865.

■ The physical characteristics of the ticket in this case are as follows. The notation "IMPORTANT NOTICE" appears in white lettering in a bright red box in the lower right-hand corner of the first four pages of the ticket. The notice states:

> The passenger's attention is specifically directed to the terms and conditions of this contract appearing on pages 6, 7, 8, 9, and 10. These terms and conditions affect important legal rights and the passenger is advised to read them carefully.

Paragraphs 1 and 2 on page 6 of the ticket provide, in relevant part:

> 1. * * * This Contract shall be the entire agreement between the parties and supersedes all representations or conditions contained in Carrier's advertisements, notices, brochures or other literature and all promises and agreements made or claimed to have been made to or with the passenger or anyone representing him by any party.
>
> 2. This ticket is valid only for the voyage specified on the front hereof and for the person or persons named on the front hereof as passenger or passengers and cannot be transferred without Carrier's written consent. The fare paid hereunder ("Passage Money") shall be considered fully earned at the time of payment * * *. Carrier shall not be liable to make any refund to passenger in respect of * * * tickets wholly or partly not used by a passenger * * *.

The parties agree that page 6 of the ticket, where the above two provisions appear, is smudged.

The forum selection clause at issue in this case appears on page 10 of the ticket and provides:

> 28. This Contract shall be governed in all respects by the laws of the State of Florida and the laws of the United States of America. It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from or in connection with this Contract and the transportation furnished hereunder shall be commenced, filed and litigated, if at all, before a court of proper jurisdiction located in Dade County, Florida, U.S.A.

Plaintiff argues that the physical characteristics of the ticket are such that enforcement of the forum selection clause would constitute "extreme unfairness." Plaintiff asserts that the introductory paragraphs on page 6 are illegible, the type size is unreasonably small, and that she had no reasonable opportunity to review the 28 paragraphs of fine print after she received the ticket and before she boarded the ship. She also states that no one explained the critical contract terms to her.

Although I agree that the first few paragraphs of the ticket are difficult to read, I disagree that its physical characteristics render the forum selection clause unenforceable. Even the smudged page clearly informs passengers that they

"are advised to read the terms and conditions of the Passenger Ticket Contract set forth below. Acceptance of this Passenger Ticket Contract by Passenger shall constitute the agreement of Passenger to these Terms and Conditions."

As Kloster points out, in *Dempsey,* the Ninth Circuit examined the physical characteristics of a virtually identical Norwegian ticket and concluded that "[t]he physical characteristics of the ticket * * * clearly informed Dempsey that her rights were being limited." *Dempsey,* 972 F.2d at 999. The court explained:

The ticket contained the notation "Important Notice" in a bright red box at the bottom right-hand corner of each of the first four pages. The message contained in the box clearly informed the passenger that he or she should read certain pages of the ticket that "affect important legal rights." The terms and conditions begin on page 6 of the ticket, and at the top of this page it is stated in bold letters: "Passengers are advised to read the terms and conditions of the Passenger Ticket Contract set forth below. Acceptance of this Passenger Ticket Contract by Passenger shall constitute the agreement of Passenger to these Terms and Conditions." The clause at issue is found at page 8, paragraph 13 of the ticket. This clause clearly provides that suits must be brought within one year of injury.

*Norwegian went to great lengths to inform passengers of the various terms and conditions that could affect their rights.* *Dempsey,* 972 F.2d at 999 (emphasis added).

Plaintiff's ticket in this case contains warnings and language identical to that described by the *Dempsey* court. The ticket clearly advised plaintiff to read the relevant provisions, including the forum selection clause. Although the terms and conditions of the contract are in very fine print, plaintiff testi-fied in deposition that she could read the red-and-white notice provision and demonstrated her ability to do so on the record. That she chose not to read the notice provision or the contract terms and conditions in advance of the cruise and chose not to have someone else read them or explain them to her does not alter the fact that the ticket put her on notice of the need "to read [the provisions] carefully." Moreover, that plaintiff might not have *understood* the terms and conditions (had she read them), as counsel asserts, is immaterial to the issue of whether the existence of the forum selection clause was reasonably communicated. I conclude that the ticket reasonably informed plaintiff that it contained terms and conditions that could affect her rights, and that the language of the forum selection clause is unmistakable in intent.

The second prong of the "reasonable communicativeness" test requires an examination of the circumstances surrounding plaintiff's purchase and retention of the ticket. *Deiro,* 816 F.2d at 1364. Plaintiff first contends that her ticket was nonrefundable once she paid for it, and that she could not reject the forum selection clause without automatically forfeiting the entire purchase price ($3,555). Plaintiff argues that because of that penalty, enforcement of the forum selection clause in her case would be unfair. Plaintiff relies on language from *Shute,* in which the Supreme Court, in discussing the issue of fairness, commented that the Shutes "presumably retained the option of rejecting the contract with impunity" (499 U.S. at 596, 111 S.Ct. at 1528), and on *Corna v. American Hawaii Cruises, Inc.,* 794 F.Supp. 1005 (D.Hawaii 1992), in which the district court refused to apply a forum selection clause to passengers who received their tickets too late to cancel without forfeiting the entire fare.

Kloster contends that plaintiff received her ticket in time to cancel without forfeiting the entire fare, thus distinguishing this case from *Corna, supra.* The evidence shows that plaintiff received her ticket approximately 10 days before the cruise. Under Kloster's cancellation policy, it appears that plaintiff would have forfeited only $400 of the total fare if she had canceled up to four days

before sailing.[5] Kloster also points out that plaintiff was sufficiently aware of the cancellation policy to have purchased cancellation insurance and that, in any event, she did not even read the ticket until after she boarded the ship.

Plaintiff also argues that she was unable to read the fine print of the contract, even wearing her glasses. As mentioned above, however, plaintiff was able to read the notice provision when asked to in her deposition. Plaintiff was thus on notice that the ticket contained important terms and conditions. Her failure to further inform herself of the content of those terms and conditions does not render them unenforceable.

Plaintiff has not presented any persuasive evidence that she lacked the "ability to become meaningfully informed of the contractual terms at stake," and has not demonstrated that enforcement of the contractual forum selection clause in this case would otherwise be fundamentally unfair. Kloster reasonably communicated the terms and conditions of its contract to plaintiff, and she had a reasonable opportunity to reject those terms and conditions before boarding. Moreover, the selection of Florida as the forum is reasonable. *See Shute,* 499 U.S. at 592–94, 111 S.Ct. at 1527–28.

Plaintiff also contends that her age and limited income are special circumstances warranting setting aside the forum selection clause. As Kloster points out, however, plaintiff spent $3,555 on the cruise, and her recent travel history demonstrates that she is able to travel. I agree with Kloster that plaintiff has not satisfied the "heavy burden of proof" required to set aside the clause on grounds of inconvenience. *Shute,* at 594, 111 S.Ct. at 1528.

In summary, the forum selection clause is valid and enforceable. Although Kloster seeks dismissal of plaintiff's complaint on the basis of the forum selection clause, plaintiff has asked that if the clause is enforced, the case be transferred to Florida in the interest of justice pursuant to 28 U.S.C. § 1406(a),[6] because dismissal would extinguish her claim under the applicable Florida statute of limitations. Kloster appears to agree that transfer is appropriate; accordingly, the case will be transferred to the Southern District of Florida.

## II. *Personal Jurisdiction*

 Because the equities in this case ultimately may favor trial in Oregon under 28 U.S.C. § 1404(a),[7] I will address the issue of personal jurisdiction over Kloster. I note at the outset, however, that jurisdiction over defendants John Doe, M.D., and Jane Doe, R.N., was not raised or argued by the parties. Based on the representations of counsel during argument, however, it may very well be that the doctor and nurse are outside this court's jurisdiction.

 The plaintiff bears the burden of establishing jurisdiction. *Farmers Ins. Ex. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 912 (9th Cir.1990). Where the court decides the jurisdictional issue based on affidavits and written discovery materials, the plaintiff "is only required to make a prima facie showing of jurisdictional facts in order to defeat a motion to dismiss." *Farmers Ins. Ex.,* 907 F.2d at 912 (citation omitted); *see also* Judge William W. Schwarzer, Judge A. Wallace Tashima, & James M. Wagstaffe, Federal Civil Procedure Before Trial ¶¶ 9:116–118, at 9–25 (1994) (herein, "Wagstaffe") ("[i]n this context, a 'prima facie'

---

5. I agree with Kloster that the language in the ticket on which plaintiff relies: "the fare paid hereunder ("Passage Money") shall be considered fully earned at the time of payment * * * Carrier shall not be liable to make any refund to passenger in respect of * * * tickets wholly or partly not used by a passenger * * *," does not contradict or preclude Kloster's cancellation policy and does not require me to find that plaintiff would have forfeited the entire fare if she had canceled.

6. 28 U.S.C. § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

7. 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

showing means that plaintiff has produced admissible evidence which, *if believed,* would be sufficient to establish the existence of personal jurisdiction" (citation omitted; emphasis in original)).

■ To establish personal jurisdiction, the plaintiff must show both that the forum state's long-arm statute confers personal jurisdiction over the nonresident defendant and that the exercise of jurisdiction comports with federal due process. *See, e.g., Gray & Co. v. Firstenberg Machinery Co., Inc.,* 913 F.2d 758, 760 (9th Cir.1990); *Hirsch v. Blue Cross, Blue Shield of Kansas City,* 800 F.2d 1474, 1477 (9th Cir.1986). The Oregon long-arm statute confers jurisdiction "to the extent permitted by due process." *Gray & Co.,* 913 F.2d at 760; *see State ex rel Circus Circus Reno, Inc. v. Pope,* 317 Or. 151, 156–57, 854 P.2d 461 (1993) (in determining whether a court may exercise jurisdiction under the Oregon "catchall" provision, ORCP 4L, the court is guided by decisions of the United States Supreme Court concerning the constitutionality of such exercise under the Fourteenth Amendment).[8]

■ Due process requires that a defendant have a "minimum level of contacts with the forum before personal jurisdiction may be exercised." *Farmers Ins. Ex.,* 907 F.2d at 913, *citing International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). If a nonresident defendant's activities in the forum state are substantial or continuous and systematic, the court may assert general jurisdiction over a claim, even if the claim is unrelated to the defendant's forum activities. *Hirsch,* 800 F.2d at 1477. If the defendant's contacts are neither substantial nor continuous and systematic, the court must determine if "specific" or "limited" jurisdiction exists. *Farmers Ins. Ex.,* 907 F.2d at 913; *Hirsch,* 800 F.2d at 1477.

■ In determining whether specific jurisdiction exists in Oregon, I apply the following three-part test:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which [it] purposefully avails [it]self of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws.

(2) the claim must be one which arises out of or results from the defendant's forum-related activities.

(3) exercise of jurisdiction must be reasonable.

*Hirsch,* 800 F.2d at 1477; *Farmers Ins. Ex.,* 907 F.2d at 913; *see generally* Wagstaffe, ¶¶ 3:116–119.

■ The focus in due process analysis is on the defendant's relationship to the forum and to the litigation. *Hirsch,* 800 F.2d at 1478. "Purposeful availment" analysis thus turns on whether the defendant's contacts are attributable to the defendant's own actions and not to the unilateral actions of some other party. *Hirsch,* 800 F.2d at 1478, *citing Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In *Hirsch,* the court explained that the purposeful availment prong is satisfied "when a defendant takes deliberate actions within the forum state or creates continuing obligations to forum residents." 800 F.2d at 1478. It is not necessary that the defendant be physically present within or have physical contact with the forum, provided the defendant's efforts are "purposefully directed" toward forum residents. *Hirsch,* 800 F.2d at 1478 (citations omitted).

■ Plaintiff contends that general jurisdiction exists over Kloster in Oregon based on Hanns' presence within the state and Kloster's other activities in Oregon related to plaintiff's cruise. I need not decide whether general jurisdiction exists, however, because on the facts presented, I conclude that plaintiff has made a prima facie showing of jurisdictional facts. Through its agents, including Hanns, Kloster took deliberate action in Oregon to promote and sell a cruise package to plaintiff. Kloster's success in that regard created a continuing obligation between it

---

8. The parties dispute the standard to be applied in determining whether specific jurisdiction exists under ORCP 4D(1) for Kloster's solicitation activities in the state. I need not resolve that dispute, because I conclude that the exercise of personal jurisdiction is proper under ORCP 4L.

and plaintiff, an Oregon resident. Moreover, plaintiff's injuries, which allegedly occurred aboard the Windward, "resulted from" Kloster's forum-related activity of selling the cruise to her. Finally, I find that in the absence of the forum selection clause, the exercise of jurisdiction over Kloster in Oregon in these circumstances would be reasonable.

Based on the above, I conclude that personal jurisdiction over Kloster exists in Oregon. That portion of Kloster's motion to dismiss is, therefore, DENIED.

In the event the district court for the Southern District of Florida is called upon to consider a motion to transfer this case back to Oregon pursuant to 28 U.S.C. § 1404(a), I also note the following facts that appear in the record. Plaintiff is 78 years old. All of her witnesses, including her physicians and the members of her church group, are located in Oregon. Plaintiff's attorney is located here. In contrast, although Kloster's headquarters and legal department are located in Coral Gables, Florida, the doctor and nurse, presumably key witnesses, apparently are citizens of Canada. The injury allegedly occurred off the coast of Mexico, while the Windward was sailing toward Los Angeles on the West Coast. The Windward itself varies in location. Given the likely sizeable disparity in the parties' financial resources, the burden on plaintiff to proceed in Florida far exceeds the burden on Kloster to proceed here, where Kloster already has local counsel. Finally, as in the Southern District of Florida, this court's docket would permit an early trial setting.

## CONCLUSION

Defendant Kloster Cruise Lines, Limited's motion to dismiss (# 7) is GRANTED IN PART, DENIED IN PART, and MOOT IN PART in accordance with this opinion. This case shall be transferred to the United States District Court for the Southern District of Florida.