**SISKIYOU PROPERTIES, LLC,**
**Plaintiff–Appellant,**

v.

**BENNETT HOLDINGS, LC, an Idaho Limited Liability Company,**
**Defendant–Appellee.**

**No. 99–36175.**
**D.C. No. CV 99–01062–GMK.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 2001.

Decided June 25, 2001.

courts of this circuit except as provided by 9th Cir. R. 36–3.

Before GOODWIN, GREENBERG,* and RAWLINSON, Circuit Judges.

MEMORANDUM **

In this action for breach of contract in the purchase of a shopping mall, Siskiyou, the Oregon plaintiff, appeals the district court's order that granted the motion of Bennett, an Idaho citizen, to dismiss for lack of personal jurisdiction. Bennett, the seller, argues that the district court did not have personal jurisdiction and, in the alternative, that it also lacked subject matter jurisdiction. This Court reviews de novo the district court's dismissal of a case for lack of jurisdiction. *See United States v. Ruiz–Alvarez*, 211 F.3d 1181, 1184 (9th Cir.2000). In a diversity case, the district court's job is to predict how the forum state's highest court would interpret and apply the relevant state law. *See Stanford Ranch, Inc. v. Maryland Casualty Co.*, 89 F.3d 618, 624 (9th Cir.1996).

In March 1998, Brent E. Terrell, a real estate agent, telephoned Alan Wells in Corvallis, Oregon. Wells was the agent of Siskyou's predecessor in interest, Eric Bunn, and is a principal of Siskiyou. Terrell told Wells that he was soliciting offers to purchase the Eastside Marketplace (hereinafter "the Property") in Idaho.

Shelley Bennett and Terrell stated in affidavits that Bennet did not retain Terrell or his firm to sell the Marketplace. Rather, they explain that when Terrell told Shelley Bennett that he had a prospective buyer, Bunn, Bennett responded that she and her parents would be willing to look at an offer. Terrell mailed Wells a marketing "package" concerning the property. The package included photographs, finan-

* The Honorable Morton I. Greenberg, United States Circuit Judge for the Third Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

cial statements, lease summaries, a site plan, and other information to assist a potential purchaser in evaluating the property.

Bunn communicated to Terrell a purchase offer, but this offer was rejected in favor of a competing offer. When the proposed sale did not close, Terrell and Wells resumed negotiations. Each claims that the other initiated communication. According to Wells, Terrell and Bennett contacted Wells and other employees of Bunn in Oregon dozens of times by telephone, mail, fax, and e-mail throughout the solicitation, negotiation, and due diligence processes. Terrell maintains that he handled the negotiations with Wells. Wells claims that he communicated principally with Bennett. Wells claims that Terrell and Bennett sent him enough documents to fill many boxes. The parties negotiated for nearly a year.

On or about February 9, 1999, Bunn and Bennett entered into an agreement (hereinafter, "the Agreement"), under which Bennett would sell the Property to Bunn. (Siskiyou is the assignee of Bunn's rights under the Agreement.) Siskiyou claims that "the due diligence process eventually resulted in the discovery that Terrell and Bennett had misrepresented certain material financial information."

Siskiyou sued for breach of contract. Bennett filed a motion to dismiss for lack of personal and subject matter jurisdiction or, in the alternative, for a transfer of venue to the District of Idaho. On November 15, 1999, the district court denied Bennett's motion to dismiss for lack of subject matter jurisdiction, but granted its motion to dismiss for lack of personal jurisdiction, and ruled that Bennett's motion for a change of venue was moot.

### Personal Jurisdiction

■ "Oregon's long-arm statute confers jurisdiction to the extent permitted by due process." *Gray & Co. v. Firstenberg Machinery Co., Inc.*, 913 F.2d 758, 760 (9th Cir.1990) (citing Or. R. Civ. P. 4L). Thus, the question for this court, as it was before the district court, is whether the assertion of personal jurisdiction comports with federal due process law.

Therefore, the narrow, three-part question is:

(1) Did the defendant do some act "by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws?"

(2) Did the claim "arise out of the defendant's forum-related activities?"

(3) Is the exercise of jurisdiction on the facts of the case reasonable?

*Gray & Co.*, 913 F.2d at 760 (quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 380 (9th Cir.1990)). The Ninth Circuit has stated that "the 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).

The district court held that Bennett had not purposefully availed itself of the privilege of doing business in Oregon. It concluded that the dealings between the parties "did not create the type of continuing relationship or continuing obligations to Oregon residents or business entities that would allow this court to exercise personal jurisdiction over Bennett." The district court thus held that the exchange of documents and communications between Bennett and Bunn were insufficient to create personal jurisdiction in the absence of a representative or agent of Bennett traveling to Oregon as part of the transaction.

Siskiyou argues that Bennett's solicitation of bids from an Oregon resident,

which involved dozens of phone calls and shipping boxes of documents to Oregon during the negotiation and due diligence phases of the contract, constituted purposeful availment. Certainly those activities cannot be ignored. However, telephone and mail contacts alone have been held to be insufficient to satisfy the purposeful availment test. *See Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985).

■ Turning to the execution of the contract, apparently without a face-to-face meeting in Oregon, Siskyou contends that the terms of the Agreement demonstrate that Bennett "created 'continuing obligations' between itself and the Oregon buyer." However, again, a contract alone does not automatically provide the required minimum contacts for the exercise of personal jurisdiction. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Nevertheless, we have said: "[i]t is not required that a defendant be physically present within, or have physical contacts with, the forum, provided that his efforts 'are purposefully directed' toward forum residents." *Ballard*, 65 F.3d at 1498 (quoting *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir.1986)). As the Supreme Court explained in *Burger King*,

> we have emphasized the need for a "highly realistic" approach that recognizes that a "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction."

*Burger King*, 471 U.S. at 479.

Under *Burger King*'s approach, the real object of the contract transaction was to place the new owner, Siskyou's predecessor in interest, in possession of land in Idaho. That part of the activity could be called "purposeful" but it could equally

have been accomplished while Bunn, or his agent, Wells, were vacationing in Hawaii, or Fiji. According to Wells, a real estate agent in Oregon who worked for Bunn, the original Oregon purchaser, Terrell, twice sought him out to solicit a bid for the Property. Wells also testified that he received boxes of documents and dozens of letters, faxes, and e-mails in Oregon from Terrell and Bennett. These activities spanned a full year and begin to look like "availment." Wells testified that Bennett contacted other professionals who worked for Bunn, all of whom were located in Oregon in connection with this transaction. However, Bennett argues that it did not direct any general sales effort at Oregon, but merely responded to Bunn's offer to purchase. No principal or agent of Bennett's ever visited Oregon. Bennett argues that the bulk of the correspondence by Bennett was issued in response to Siskyou's expression of renewed interest in the property, and solicited by Siskyou in the Purchase and Sale Agreement for the property. Bennett notes that had the transaction been consummated, it would have closed in Idaho with funds disbursed in Idaho, and the conveyance document recorded in an Idaho courthouse.

We agree with the district court that Bennett did not purposefully avail itself of the privilege of doing business in Oregon and that, therefore, the district court lacked personal jurisdiction over Bennett. Because we hold that the district court lacked personal jurisdiction, we need not reach the questions whether it had subject matter jurisdiction and whether venue was proper. Accordingly, we

AFFIRM.