## FIREMAN'S FUND INSURANCE COMPANY, Plaintiff–Appellee,

Interstate Fire & Casualty Company; Federal Insurance Company; National Union Fire Insurance Company of Pittsburgh, PA., Intervenors–Appellees,

v.

## NATIONAL BANK OF COOPERATIVES, as Successor in Interest to the Texas Bank for Cooperatives, Defendant,

and

### Aldus Marketing Association, Defendant–Appellant.

No. 95–16252.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 2, 1996.

Decided Dec. 26, 1996.

Elko and White Pine Counties, State of Nevada (Before the Nevada State Engineer)."

Michael A. Barnes, Sonnenschein, Nath & Rosenthal, San Francisco, California, for plaintiff-appellee.

Mark G. Bonino, Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Redwood City, CA; Ronald F. Remmel, Newton, Kastner & Remmel, Mountain View, CA, for intervenors-appellees.

John Steven Dwyre, San Antonio, TX, for defendant-appellant.

Before: SKOPIL and FLETCHER, Circuit Judges, and RHOADES,* District Judge.

FLETCHER, Circuit Judge:

Aldus Marketing Association ("Aldus"), a Texas corporation, appeals the district court's grant of summary judgment to Fireman's Fund Insurance Company ("Fireman's Fund"), Interstate Fire and Casualty Company ("Interstate"), and Federal Insurance Company ("Federal") (collectively, "insurers"). The insurers sought declaratory judgments that Aldus has no claims against them

* Honorable John S. Rhoades, Senior United States District Judge for the Southern District of California, sitting by designation.

for coverage ·on policies· issued to Lawrence Warehouse Systems or its successor, XLS, Inc. ("Lawrence/XLS"), a now-defunct California inventory control corporation against whom Aldus holds an arbitration award and judgment.

Aldus claims that the district court did not have personal jurisdiction over it because Aldus lacks the requisite minimum contacts with California. Aldus also challenges the district court's grant of summary judgment, claiming that a genuine issue of material fact exists as to whether Lawrence/XLS caused Aldus "property damage" within the terms of the policies issued to Lawrence/XLS by the insurers. Finally, Aldus contends that the district court erred in disregarding as untimely Aldus's motion to dismiss for failure to join Lawrence/XLS as an indispensable party. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1986, Aldus entered into an agreement with Lawrence and the Texas Bank for Cooperatives, the predecessor to the National Bank for Cooperatives ("CoBank"). The agreement, known as the Certified Inventory Control Agreement ("CICA"), provided that Lawrence would certify the quantity and value of Aldus's peanut inventory. On the basis of Lawrence's certifications, CoBank would extend credit to Aldus, secured by the value of the peanut inventory. Lawrence agreed to compensate CoBank for losses up to $5,000,000.00 (later increased to $10,000,-000.00) "sustained as a result of [CoBank's] reasonable reliance upon a material inaccurate representation ... on the last outstanding certificate." Paragraph 7 of the CICA obligated the parties to submit all disputes related to the agreement to binding arbitration in San Francisco, California.

Aldus retained custody and control over its peanut inventory at all relevant times. Lawrence materially misrepresented the value of that peanut inventory on several inventory certificates submitted to CoBank. CoBank

reasonably relied on these representations in extending credit to Aldus. *See Fireman's Fund Ins. Co. v. Nat'l Bank for Coop.* ("*Fireman's Fund I* "), 849 F.Supp. 1347, 1352–53 (N.D.Cal.1994).

Lawrence filed for Chapter 11 bankruptcy protection in 1988. In 1992, CoBank initiated arbitration in San Francisco against XLS as Lawrence's successor. Lawrence/XLS did not defend the arbitration, which resulted in an award in favor of CoBank for $10,000,000.00 plus costs and interest. *Id.* at 1353. CoBank reduced its award to judgment in the United States Bankruptcy Court for the Northern District of California. *Id.* at 1354.

Subsequently, Lawrence/XLS's insurers sued CoBank for a declaratory judgment that they were not liable to CoBank for the arbitration award. This suit was filed in the U.S. District Court for the Northern District of California under federal diversity jurisdiction, 28 U.S.C. § 1332,[1] and the federal Declaratory Judgment Act, 28 U.S.C. § 2201. District Judge Barbara Caulfield determined that CoBank had not suffered "property damage" or other injury within the meaning of Lawrence/XLS's insurance policies and granted the insurers' motions for summary judgment against CoBank. *Fireman's Fund I*, 849 F.Supp. at 1369.

Meanwhile, Aldus had initiated proceedings against Lawrence/XLS in Texas state court under the Texas Deceptive Trade Practices Act, Tex. Bus. & Comm.Code §§ 17.41–17.62 ("TDPA"). Case No. 92–05172 (Tex. 261st Jud. Dist., filed Apr. 14, 1992). Pursuant to the CICA, the Texas action was stayed and the dispute was decided through arbitration in California. *See Fireman's Fund Ins. Co. v. Nat'l Bank for Coop.*, No. CV–92–2667–VRW, 1995 WL 334809 (N.D.Cal. May 30, 1995) ("*Fireman's Fund II* "), at *1.

A few months after Aldus initiated its Texas action against Lawrence/XLS, the U.S. Bankruptcy Court for the Northern District of California issued an injunction in Lawrence/XLS's bankruptcy case. It barred Al-

---

1. The lead plaintiff, Fireman's Fund, is a California corporation. Interstate is an Illinois corporation. Federal is a New Jersey corporation.

CoBank is a citizen of Colorado for purposes of jurisdiction in this litigation.

dus or CoBank from enforcing any judgment directly against Lawrence/XLS, but preserved their right to proceed against Lawrence/XLS's insurers. *Id.*

On September 14, 1994, the arbitrators determined that Aldus had sustained "actual damages" of $3,752,456.90 due to Lawrence/XLS's "false, misleading, and deceptive acts and practices." Because Lawrence had committed those acts and practices knowingly, the arbitrators further awarded Aldus twice its actual damages, or $7,505,913.80, plus interest. They also awarded Aldus costs, fees, and expenses totalling more than $1.5 million. Aldus reduced this award to a Texas judgment in the amount of $13,665,139.02 against Lawrence/XLS.

While the arbitration was pending, Lawrence/XLS's insurers moved to join Aldus as a defendant in their declaratory relief action against CoBank. CoBank opposed joinder of Aldus, claiming that Aldus lacked sufficient contacts with California to subject it to personal jurisdiction in the district court. The district court rejected CoBank's arguments and joined Aldus as a defendant, predicating jurisdiction on Aldus's consent to arbitration in California.

On June 6, 1994, Aldus moved to dismiss the insurers' action against it, claiming lack of personal jurisdiction, failure to state a claim for which relief can be granted, and lack of subject matter jurisdiction. In the alternative, Aldus requested that the suit be stayed pending completion of the arbitration or transferred to the U.S. District Court for the Northern District of Texas. Aldus received its arbitration award on September 14, 1994. On October 19, 1994, Aldus filed an amended motion to dismiss based solely on lack of personal jurisdiction.

On December 12, 1994, District Judge Vaughn R. Walker denied Aldus's motion to dismiss, stay, or transfer. Judge Walker found, as had District Judge Caulfield in rejecting CoBank's motion opposing joinder, that Aldus had consented to jurisdiction in California by agreeing to the arbitration clause in the CICA. Judge Walker also rejected Aldus's claim that the court could not issue a declaratory judgment against it because it was a bankrupt "corporate shell."

Judge Walker expressed serious concerns about the "gamesmanship" of Aldus's attorney, Paul Miller. The judge ordered Miller to show cause within 20 days as to why the court should not impose Rule 11 sanctions against him. After reviewing Miller's submission and those of the insurers, Judge Walker found Aldus's motion of June 6 frivolous and imposed Rule 11 sanctions against Miller.

Pursuant to Judge Walker's order, the insurers filed amended complaints seeking declaratory judgments that Aldus has no claim against them to enforce its arbitration award against Lawrence/XLS. Aldus answered these complaints, again denying that it was subject to personal jurisdiction in California. The insurers then moved for summary judgment, alleging that no genuine issue of material fact remained for trial. Before the summary judgment motions were heard, Aldus filed a motion to dismiss for failure to join Lawrence/XLS as an indispensable party under F.R.Civ.P. 19. In support of this motion, Aldus claimed that the lawsuit threatened Lawrence/XLS's interests, that complete relief could not be granted without Lawrence/XLS, and that because joinder of Lawrence/XLS would destroy diversity, the action should be dismissed.

Judge Walker heard the insurers' motions on May 12, 1995. However, because Local Rule 220–6 requires that counter-motions be filed with opposition papers, and Aldus had filed its motion to dismiss two weeks after filing its papers opposing the summary judgment motions, the judge found Aldus's motion untimely and did not consider it.

Judge Walker determined that the only issue to be resolved was whether Aldus could enforce the arbitration award against the insurers and that this issue turned on whether Lawrence/XLS's policies covered the damages for which Aldus had received that award. Noting that the CoBank litigation had already resolved the coverage issue in the insurers' favor, Judge Walker held that Lawrence's intentional misrepresentations had not caused Aldus "property damage" as defined in the insurance policies and that Aldus had no other basis for recovering un-

der Lawrence/XLS's policies. Judge Walker also sustained the Rule 11 sanctions against Miller and fixed those sanctions at the costs incurred by the insurers in defending Miller's frivolous motion.[2]

On May 30, 1995, Judge Walker issued a final judgment and order granting the insurers' motions for summary judgment and imposing sanctions on Miller. *Fireman's Fund II*, 1995 WL 334809 (unpublished order). Aldus filed a timely notice of appeal on June 29, 1995.

## DISCUSSION

### I. *Personal Jurisdiction*

■ The insurers bear the burden of establishing that the district court had personal jurisdiction over Aldus. *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 379 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). Where, as here, the facts underlying the court's exercise of jurisdiction are undisputed, the court reviews the district court's personal jurisdiction determination *de novo*. *Reebok Int'l, Ltd. v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir.), *cert. denied*, — U.S. ——, 116 S.Ct. 276, 133 L.Ed.2d 197 (1995).

■ Aldus claims that the district court lacked personal jurisdiction over it because Aldus does not have sufficient contacts with California to subject it to jurisdiction in that state. In a diversity action, the U.S. District Court for the Northern District of California may exercise personal jurisdiction over a non-resident defendant if jurisdiction is proper under California's long-arm statute and if that exercise of jurisdiction accords with federal constitutional due process principles. *See Shute*, 897 F.2d at 380; *Pacific Atlantic Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1327 (9th Cir.1985). California's long-arm statute authorizes the court to exercise personal jurisdiction over a non-resident defendant on any basis not inconsistent with the California or federal Constitution. Cal. Code Civ. Proc. § 410.10. The statutory and constitutional requirements therefore merge

into a single due process test. *Shute*, 897 F.2d at 380.

Due process requires that a defendant have "minimum contacts" with the forum state "so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Shute*, 897 F.2d at 380 (citing *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). However, the nature and quality of contacts necessary to support jurisdiction depends upon the type of jurisdiction asserted. *Id.*

Neither the insurers nor the district court have suggested that Aldus has "substantial" or "continuous and systematic" contacts with California so as to subject Aldus generally to personal jurisdiction in that state. *See Fields v. Sedgwick Assoc. Risks, Ltd.*, 796 F.2d 299, 301 (9th Cir.1986). In rejecting CoBank's opposition to the joinder of Aldus as a defendant, Judge Caulfield determined that Aldus had consented to personal jurisdiction in California as a party to the CICA. Judge Walker denied Aldus's motion to dismiss for lack of personal jurisdiction on essentially the same basis. The insurers now argue that even if Aldus did not consent to jurisdiction in California, the district court had specific jurisdiction over Aldus because the lawsuit arises out of Aldus's agreement with a California company providing for arbitration in California, and out of the California arbitration award on which Aldus would base any claim against the insurers.

If Aldus consented to personal jurisdiction in California by agreeing in the CICA to arbitration in San Francisco, then Aldus has waived its right to object to personal jurisdiction in this litigation. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n. 14, 105 S.Ct. 2174, 2182 n. 14, 85 L.Ed.2d 528 (1985) (discussing consent as a basis for personal jurisdiction); *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703, 102 S.Ct. 2099, 2104–05, 72 L.Ed.2d 492 (1982). But even if the arbitration clause does not amount to Aldus's consent to per-

---

**2.** These sanctions totalled $1,960.25 to Fireman's Fund, $1,365 to Interstate, and $1,000 to National Union Fire Insurance Company of Pittsburgh (an additional insurer not involved in the instant appeal).

sonal jurisdiction in California, the district court still may exercise "specific jurisdiction" over Aldus if the insurers' cause of action arises out of Aldus's activities in California. *Shute,* 897 F.2d at 381.

This Circuit applies a three-part test to determine whether specific jurisdiction comports with due process:

(1) The defendant must have done some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must arise out of the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Id.* (citations omitted).

### A. *Purposeful availment*

■ Aldus has purposefully availed itself of the privilege of conducting activities in California. First, by entering into an agreement with Lawrence/XLS, a California corporation, and by consenting to arbitrate disputes over that agreement in California, Aldus has "engage[d] in some form of affirmative conduct allowing or promoting the transaction of business within the forum state." *Id.*

Second, while Aldus did not physically enter California to form the CICA, physical presence in the forum state does not determine whether the defendant has purposefully availed itself of the benefits and privileges of that state. *See Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. Aldus *did* enter California to arbitrate its dispute with Lawrence/XLS. This arbitration resulted in an award for Aldus. Aldus also participated in adversarial bankruptcy proceedings against Lawrence/XLS in the U.S. Bankruptcy Court for the Northern District of California. These proceedings resulted in an injunction preventing Aldus from proceeding directly against Lawrence/XLS to enforce the arbitration award. Clearly, Aldus not only has taken advantage of services offered in California, it also has created "'continuing obligations' between [it]self and residents of the forum." *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184 (quoting *Travelers Health Ass'n*

*v. Virginia,* 339 U.S. 643, 648, 70 S.Ct. 927, 929–30, 94 L.Ed. 1154 (1950)).

### B. *Arising out of*

■ In order for Aldus's purposeful activities in California to support personal jurisdiction, this lawsuit must "arise out of" those activities. Under our Circuit's "but for" test, a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action. *Shute,* 897 F.2d at 385. Here, the insurers seek a declaratory judgment that Aldus has no claim against them to enforce the arbitration award Aldus obtained in California against a California corporation. Absent Aldus's California-related activities, the insurers would have no reason to pursue declaratory relief. Unquestionably, the requisite nexus exists.

### C. *Reasonableness*

■ Even if this litigation arises out of Aldus's purposeful activities in California, the district court's exercise of jurisdiction over Aldus must be reasonable. The reasonableness requirement ensures that personal jurisdiction comports with "fair play and substantial justice." *International Shoe,* 326 U.S. at 320, 66 S.Ct. at 160. In *Shute,* this court listed seven factors for consideration in determining reasonableness:

the extent of purposeful interjection, the burden on the defendant to defend the suit in the chosen forum, the extent of conflict with the sovereignty of the defendant's state, the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum.

897 F.2d at 386.

We need not undertake a detailed examination of each factor here. By agreeing to arbitration in San Francisco, Aldus indicated its willingness to resolve disputes in California. By participating in both arbitration and bankruptcy proceedings in California, Aldus demonstrated its ability to defend its interests in California.

Moreover, the district court's grant of summary judgment to the insurers results only in a declaration that Aldus has no claim against the insurers; it does not expose Aldus to any additional litigation in California. On the other hand, dismissal and relitigation in Texas or elsewhere would impose a significant financial burden on all of the parties, including Aldus.

Finally, Aldus has repeatedly tried to file lawsuits in Texas regarding its claims against Lawrence/XLS or the insurers, and the Texas courts consistently have dismissed or transferred these lawsuits.

■ Aldus has not shown that litigation in California has been or would be "so gravely difficult and inconvenient" as to render the court's exercise of personal jurisdiction unreasonable. *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18, 92 S.Ct. 1907, 1917–18, 32 L.Ed.2d 513 (1972)). We therefore hold that the district court properly exercised personal jurisdiction over Aldus.

## II. *Summary Judgment*

We review *de novo* the district court's grant of summary judgment. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, — U.S. —, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). We must view the evidence in the light most favorable to the nonmoving party, Aldus, and determine "whether genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law." *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). In reviewing the district court's grant of summary judgment to the insurers, we do not weigh the evidence or determine the truth of the matter. We must uphold a grant of summary judgment unless a genuine issue of material fact exists for trial. *Abdul–*

*Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir.1996); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).

The only factual issue on which this action depends is whether Aldus's arbitration award and judgment include damages for "property damage" covered by the policies issued to Lawrence/XLS by the appellee insurance companies. In the first stage of this litigation, Judge Caulfield found that CoBank's losses due to Lawrence/XLS's misrepresentations did not constitute "property damage" within the meaning of the policies. *Fireman's Fund I*, 849 F.Supp. at 1357. Although that decision is not *res judicata* with regard to Aldus, Judge Walker concluded that Judge Caulfield's analysis compelled the same result with regard to Aldus's damages. We agree.

From 1984 to 1991, Fireman's Fund insured Lawrence against general liabilities under six policies. From 1986 to 1988, Interstate provided supplemental liability coverage to Lawrence/XLS. From 1988 to 1989, Federal provided supplemental liability coverage to Lawrence/XLS. These policies covered four types of injury: property damage, bodily injury, personal injury, and advertising injury. *Fireman's Fund I*, 849 F.Supp. at 1355.

Aldus's arbitration award and the Texas judgment to which Aldus reduced that award state that Aldus's only damages were "actual damage within the provisions of Section 17.50(a)(1) and (3) of the Texas Deceptive Trade Practices/Consumer Protection Act." Aldus claims that "actual damages" under this section of the TDPA means "property damage." This claim, however, finds no support in the language of Section 17.50(a).[3] Nothing in any other provision of the TDPA suggests that "actual damages" necessarily

---

**3.** Section 17.50(a) reads in pertinent part:
  (a) A consumer may maintain an action where any of the following constitute a producing cause of actual damages:
  (1) the use or employment by any person of a false, misleading, or deceptive act or practice ...
    \*   \*   \*   \*   \*   \*
  (3) any unconscionable act or course of action by any person.

Tex. Bus. & Comm.Code § 17.50(a)(1),(3).

or implicitly · means "property damages." *See* Tex. Bus. & Comm.Code §§ 17.41–17.62.

▮▮▮ Furthermore, under California law, whether a judgment triggers insurance coverage depends on a comparison of the judgment with the terms of the policies in question. *Collin v. Am. Empire Ins. Co.*, 21 Cal.App.4th 787, 26 Cal.Rptr.2d 391, 399 (1994). Although the policies at issue do not all use identical language to define "property damage," all of the policies essentially define that term to mean "physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof" or "loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period."

The parties do not dispute that Lawrence/XLS never had physical control, custody, or possession of Aldus's peanuts. The arbitrators found that Aldus sustained only "actual damages" and that all of those damages resulted from Lawrence/XLS's misrepresentations. Thus, Judge Caulfield's conclusion in the CoBank litigation holds true with regard to Aldus: "Since nothing in the arbitration award indicates that XLS *caused* property damage or that XLS caused the loss of use of property (as opposed to merely failing accurately to report the condition or value of the peanuts), XLS's insurers cannot be liable for property damage." *Fireman's Fund I*, 849 F.Supp. at 1357.

Accordingly, no genuine issue of material fact exists as to whether Lawrence/XLS's policies cover Aldus's damages. The district court properly granted summary judgment to the insurers.

### III. *Rule 12(b)(7) Motion*

On May 5, 1995, one week before the scheduled hearing date for the insurers' summary judgment motions, Aldus filed a motion to dismiss under F.R.Civ.P. 12(b)(7) for failure to join Lawrence/XLS as an indispensable party. In its motion and supporting memorandum, Aldus claimed that complete relief could not be afforded without the joinder of Lawrence/XLS, that the litigation threatened Lawrence/XLS's interests, and that because joinder of Lawrence/XLS would destroy diversity, the action should be dismissed.

The district court's Local Rule 220–6 requires counter-motions to be filed with opposition papers. Aldus filed its papers opposing summary judgment on April 28, 1995. Aldus did not file its motion to dismiss until two weeks later, on May 5. The district judge therefore disregarded Aldus's motion as untimely.

Aldus argues that the district judge erred in granting summary judgment without first considering Aldus's motion. In support of this argument, Aldus relies on F.R.Civ.P. 12(d), which provides that: "The defenses specifically enumerated in (1)-(7) in subdivision (b) of this rule, whether made in pleading or by motion, ... shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial."

▮▮▮ The merits of Aldus's Rule 12(b)(7) motion are not before us. However, because the district court's decision not to hear Aldus's motion effectively denied that motion, we will review that decision for an abuse of discretion. *See United States ex rel. Morongo Band of Mission Indians v. Rose*, 34 F.3d 901, 907 (9th Cir.1994). No case law from this or any other circuit supports Aldus's proposition that a court must hear and decide a 12(b)(7) motion before granting summary judgment. The Committee Note to Rule 19, the Federal Rule on which a 12(b)(7) motion rests, indicates that the district court has discretion to consider the timeliness of such a motion if it appears that the defendant is interposing that motion for its own defensive purposes, rather than to protect the absent party's interests. *See* Fed.R.Civ.P. 19, Committee Notes, 1966 Amendment, *in* Fed.Civ.Jud.P. and Rules (1996 ed.) at 90; *see also Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 116, 88 S.Ct. 733, 741, 19 L.Ed.2d 936 (1968) (appellate court should not "throw away a valid judgment just because it did not theoretically settle the whole controversy"). The district court did not abuse its discretion in declining to consider Aldus's motion.

Moreover, while the merits of Aldus's Rule 12(b)(7) motion are not before us, that motion

does not appear well-founded. Lawrence/XLS is defunct. Its only existence is through a court-appointed receiver nominated by Aldus. The insurers' action sought a declaration that Aldus may not enforce its arbitration award against them; Aldus already is enjoined from proceeding directly against Lawrence/XLS. It is difficult to imagine how the issuance of the proposed declaration in Lawrence/XLS's absence could prejudice Lawrence/XLS's interests or prevent the court from granting complete relief to the existing parties. *See* Fed.R.Civ.P. 19(b).

Also, Lawrence/XLS's interests have not changed since Aldus first was joined in this lawsuit. Aldus could have raised the joinder issue in its earlier motions to dismiss, stay, or transfer. Nothing before us indicates the development of any new circumstances that might justify a late motion after Aldus filed its papers opposing summary judgment. We decline to reverse the district court's grant of summary judgment simply because it declined to consider Aldus's untimely (and potentially frivolous) motion.

AFFIRMED.

